### ATWELL v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. May 22, 1908.)

No. 636.

**1. GRAND JURY—OATH—NATURE OF PROVISIONS.**

The oath of a grand juror requires him (a) diligently to inquire and true presentment make of all such matters and things as are given him in charge; (b) to present no one for envy, hatred, or malice; (c) to leave no one unpresented for fear, favor, or affection, reward, or hope of reward; (d) the United States' counsel, his fellows', and his own to keep secret. *Held*, that the first three subdivisions of the oath are mandatory, but that the fourth is not.

**2. SAME—SECRECY.**

The policy of the law does not require a grand juror to keep the evidence adduced in a grand jury room secret after the presentment and indictment has been found and made public, accused has been apprehended, and the grand jury finally discharged.

**3. CONTEMPT—FEDERAL COURT—JURISDICTION—STATUTES.**

The common-law power of federal courts to enforce their mandates by contempt proceedings is restricted by Rev. St. § 725 (U. S. Comp. St. 1901, p. 583), declaring that such power shall not extend to any cases except misbehavior of any person in the presence of the court or so near as to obstruct the administration of justice, misbehavior of any of the officers of the court in their official transactions, and the disobedience or resistance of any such officer, or by any party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of such courts.

**4. SAME—PROCEEDINGS OF GRAND JURY—DISCLOSURE.**

Rev. St. § 725 (U. S. Comp. St. 1901, p. 583), authorizes punishment for contempt by federal courts where there has been disobedience or resistance by any juror of any lawful writ, process, order, rule, decree, or command of the courts. *Held*, that a grand juror was not subject to punishment for contempt for disclosing proceedings in the grand jury room after the grand jury had been discharged.

In Error to the District Court of the United States for the Western District of North Carolina, at Charlotte.

For opinion of the court below, see 140 Fed. 368.

William P. Bynum, Jr., and Charles A. Moore (Moore & Rollins, Burwell & Cansler, Thomas Settle, and J. E. Alexander, on the brief), for plaintiff in error.

A. E. Holton, U. S. Atty. (A. L. Coble, Asst. U. S. Atty., on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and MORRIS and DAYTON, District Judges.

162 F.—7

DAYTON, District Judge. At the April term, 1905, at States-ville, in the Western district of North Carolina, a grand jury was regularly impaneled and sworn, and by it an indictment was presented against the Old Nick Williams Company, Incorporated, engaged in the business of rectifier of distilled spirits, N. G. Williams, and D. E. Kennedy, charging the violation of certain provisions of the revenue laws of the United States. This indictment was indorsed on its face as having been found upon the testimony of R. B. Sams and W. R. Stackleather. The plaintiff in error, Atwell, was a member of this grand jury, and to him was administered the usual oath, obligating him, among other things:

"The United States' counsel, your fellows', and your own you shall keep secret."

This indictment was transferred, at this same April term, from Statesville to Charlotte, there to be tried at the June term following, and this grand jury was discharged, and this term at Statesville ad-journed. Capias issued, and the personal defendants were arrested and gave bail for their appearance. When the case came on for trial at the June term the attorneys for the defendants, having determined to file a plea in abatement to said indictment on the ground that there was no evidence before the grand jury upon which to base the same, caused a subpœna to be issued against Atwell and other grand jurors to appear as witnesses on behalf of the defendants. In obedience to this subpœna Atwell appeared in Charlotte about two months after his discharge as a grand juror, and in the office of counsel for defendants disclosed to such counsel in substance the statements made before the grand jury by the witnesses Sams and Stackleather. This disclosure was made after counsel there present had assured him that it was his duty, in the interest of justice, so to do. Counsel for the defendants thereupon prepared an affidavit, setting forth the statement of such evidence made by Atwell to them, and asked him to swear thereto; but, a doubt arising in his mind as to the propriety on his part of such action, he sought the United States district attorney and asked him as to his right and duty in the premises. The district attorney advised him that he was uncertain as to the law governing the case and as to whether or not he would be guilty of illegal or improper conduct in making such affidavit. Thereupon Atwell refused positively to make the affidavit.

These facts coming to the attention of the court, on June 19, 1905, a rule was awarded against Atwell, among others, requiring him to appear on day stated and show cause why he should not be attached for contempt. Atwell appeared, answered, denying that the court had jurisdiction, or that his action in the premises constituted either contempt or misconduct, and denied that his disclosure was that of "the United States' counsel, his fellows', or his own," or that it was made for any other reason than because "he believed that he had a right to do so, and that the ends of justice required that he should make such statement," as he was aware that the defendants had been arrested and admitted to bail, that the case was then to be tried, and that the witnesses Sams and Stackleather were at the time present

to testify. Upon this answer and the facts as above substantially set forth the court below found Atwell guilty of contempt, made the rule absolute and entered judgment that he should pay to the United States a fine of $50 and the costs of the proceeding. To this judgment Atwell has sued out this writ of error.

It seems to us that a determination of the unusual, if not new and novel, questions involved in this proceeding, may be aided by a careful analysis of the oath administered to this grand juror. This oath required him (a) diligently to inquire and true presentment make of all such matters and things as were given him in charge; (b) to present no one for envy, hatred, or malice; (c) to leave no one unpresented for fear, favor, or affection, reward, or hope of reward; (d) the United States' counsel, his fellows', and his own to keep secret. It may well be said that the first three obligations of this oath relate to the positive duty required of the grand juror, while the latter relates to and defines the rule of conduct to be followed by him in the discharge of these positive duties. The first three are demanded by direct mandate of the law; the latter only by its policy, and solely in order that the first three may be the more thoroughly and effectively performed. The first three obligations are absolutely required by the law, to be laid by oath upon the conscience of the juror; the latter may be omitted, as in some courts is done, and supplied by instructions given by the court.

It seems clear to us that no indictment in any court could, having been once found, be quashed on the sole ground that the grand jurors, or any of them, had disclosed the government's counsel or the proceedings had in the grand jury room. On the contrary, an extreme case, at least, can be conceived, where a deliberate conspiracy on the part of a sufficient number of jurors to indict, not because of good cause shown, but to fulfill the dictates of malice and ill will, carried into effect by the presentation of a true bill, would be sufficient to quash. Such a case, it is true, in practical experience, could hardly occur; but if it should occur, and the evidence of it was positive and indisputable, it seems to us the duty of the court in the premises would be clear. It is clear, too, that the jurors cannot violate the first three obligations without great wrong being done to justice and society. If they do, to a degree, law is impotent and society is threatened with anarchy. This degree is increased just in proportion as the violation of these three obligations becomes persistent and general. On the other hand, it is readily to be perceived that grand jurors may fully comply with the first three obligations and violate the fourth in very many cases, without practical injury to society. Therefore we incline to draw a distinction between the fourth obligation of this oath, dictated by the policy of the law, and the first three, expressly required by the mandate of the law itself.

With this distinction in view, it becomes important to ascertain the reason for this policy of the law—when the reason for it begins, and when it ends. The reason of the law is the life of the law, and this in a much stronger sense is true as to its policy. When once the reason for a policy to be pursued no longer exists, certainly the requirement to pursue that policy ends. It would not be required of grand jurors,

we think, by any possible sound course of reasoning, after indictment found, trial and conviction had, judgment rendered, and penalty suffered, to refrain from ever discussing or mentioning to any one the testimony adduced on the trial, solely because it had been first adduced before them in the grand jury room. To what extent, then, does the policy of the law require this secrecy to be maintained? In general terms it may be answered: To the full extent necessary to fulfill the ends of justice, and no further. Very certain it is that it should be maintained during the sittings and deliberations of the grand jury; for its sole province is to make a preliminary and ex parte investigation, to ascertain if probable cause for presentment be found. This could easily be impeded by persons fearing indictment, causing themselves or others in collusion with them to be summoned to appear before that body to present their defense. Certain it is that it may well be extended to indefinite secrecy as to the discussions and vote of the individual members of the jury; for it is well that, when a citizen assumes this high and responsible duty, he may do so with the full assurance that the law will not allow him to be subjected to the malice and consequent injury growing out of his neighbor's knowledge that he had advocated or voted for a presentment against him. It may be conceded that policy demands that this secrecy be maintained until the finding is made public and the accused is in custody, in order that the government may not be in any way impeded in bringing the accused to a speedy trial.

But does this policy require secrecy as to the evidence adduced before the grand jury after such jury has made its presentment and indictment, publication thereof has been made, the grand jury finally discharged, and the defendant is in custody? We think not; because another principle of the law's policy intervenes. It is certainly the policy of the law that one accused of crime shall have every opportunity to prove his innocence; and so tender of human life and liberty is it that it throws around the accused every presumption of innocence until his guilt before the bar is clearly shown. It furnishes him counsel if he is indigent. It compels the attendance of his witnesses. It is true that it makes him criminally liable if he attempts to suborn the government witnesses, to spirit them away from the trial, or by any improper or corrupt means seeks to impede the course of justice, just as it would make so liable any prosecuting officer or government agent seeking to secure conviction by like means; but, while it does this, its policy demands that the accused shall have the fairest and fullest opportunity to make clear his innocence. To this end it directs that the names of the witnesses upon whose evidence it is found be indorsed upon the presentment, and that a copy with this indorsement shall be furnished him in advance of trial if he demands it. Will any one say that he is prevented from inquiry as to what these witnesses had or would testify against him, if such inquiry be without resort to corrupt and illegal practices? Cannot the district attorney himself, who has been before the grand jury and heard the evidence adduced before it, or has that body's notes taken at the time, so inform him or his counsel as to this testimony if he so desires? What reason, therefore, can exist why the grand jurors, under such conditions, should be

bound to secrecy? We can see none; and for these reasons we hold this fourth obligation of the grand juror's oath to require secrecy only so long as the policy of the law requires, and that that policy does not require it, so far as the evidence adduced before the grand jury is concerned, after presentment and indictment found, made public, and custody of the accused had, and the grand jury finally discharged.

But, independent of these considerations, we must consider this case, in view of section 725 of the Revised Statutes (U. S. Comp. St. 1901, p. 583), which provides:

"The said courts shall have power to impose and administer all necessary oaths, and to punish by fine or imprisonment, at the discretion of the court, contempts of their authority: Provided that such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance of any such officer, or by any party, juror, witness, or other person, to any lawful writ, process, order, rule, decree or command of said courts."

While courts are vested by common law with inherent powers to protect themselves and enforce their mandates, there can be no question that this power may be limited by legislative authority, and it cannot be further questioned that this act of Congress has limited this power in federal courts to a greater extent than it has been limited by any other government where the common law prevails. While this is true, it must be conceded by all that this power cannot be absolutely destroyed without making the mandate of the courts mere idle and meaningless fulminations to be ridiculed and not respected. Mr. Justice Johnson, in Anderson v. Dunn, 6 Wheat. 204, 5 L. Ed. 242, while substantially deciding that the power to punish by contempt may be limited by legislation, has nevertheless very pertinently said:

"The idea is Utopian that government can exist without leaving the exercise of discretion somewhere. Public security against the abuse of such discretion must rest on responsibility and stated appeals to public approbation. Where all power is derived from the people, and public functionaries at short intervals deposit it at the feet of the people, to be resumed again only at their will, individual fears may be alarmed by the monsters of imagination, but individual liberty can be in little danger. No one is so visionary as to dispute the assertion that the sole end and aim of all our institutions is the safety and happiness of the citizen. But the relation between the action and the end is not always so direct and palpable as to strike the eye of every observer. The science of government is the most abstruse of all sciences, if, indeed, that can be called a science which has but few fixed principles, and practically consists in little more than the exercise of a sound discretion, applied to the exigencies of the state as they arise. It is the science of experiment. But, if there is one maxim which necessarily rides over all others in the practical application of government, it is that the public functionaries must be left at liberty to exercise the powers which the people have intrusted to them. The interests and dignity of those who created them require the exertion of the powers indispensable to the attainment of the ends of their creation. Nor is a casual conflict with the rights of particular individuals any reason to be urged against the exercise of such powers. The wretch beneath the gallows may repine at the fate which awaits him, and yet it is no less certain that the laws under which he suffers were made for his security. The unreasonable murmurs of individuals against the restraints of society have a direct tendency to produce that worst of all despotisms, which makes every individual the tyrant over his neighbors' rights."

The wisdom of these enunciations of sound morals and correct legal principles is accentuated with redoubled force under the conditions which exist to-day. The exercise of this discretion and power by the courts is not designed for evil, but for good; not for oppression, but for protection. Very frequently those who complain the loudest against its exercise are ultimately benefited the most. Men, inflamed by passion, are frequently not capable of rightly judging of their own conduct or of foreseeing the consequences thereof. In such cases the restraining power on the part of judges, acting under solemn obligations to do "equal right to the poor and to the rich," chastened and humbled by the sense of the weighty responsibilities laid upon them, may save such persons from liability to civil and criminal actions, calculated to bring to them ruin and loss of liberty. While these things are true, we, as judges, must never fail to remember the restraints which hedge about this discretion. The contempt proceeding must be regarded as in its nature of a criminal character, and the accused must be entitled to all reasonable doubt arising from the facts alleged to constitute the contempt. He is guaranteed the right to appeal, and he may by the executive power be pardoned. This statute has been construed, and the limitations placed upon this power by it have been very clearly defined, by Mr. Justice Field in Ex parte Robinson, 19 Wall. 505, 22 L. Ed. 205, wherein he says:

"The power to punish for contempt is inherent in all courts. Its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and, consequently, to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power. But the power has been limited by Act Cong. March 2, 1831, c. 99, 4 Stat. 487. The act in terms applies to all courts. Whether it can be held to limit the authority of the Supreme Court, which derives its existence and powers from the Constitution, may, perhaps, be a matter of doubt; but that it applies to the Circuit and District Courts there can be no question. These courts were created by act of Congress. Their powers and duties depend upon the act calling them into existence, or subsequent acts extending or limiting their jurisdiction. The act of 1831 is, therefore, to them the law specifying the cases in which summary punishment for contempt may be inflicted. It limits the power of these courts in this respect to three classes of cases: (1) Where there has been misbehavior of a person in the presence of the courts, or so near thereto as to obstruct the administration of justice; (2) where there has been misbehavior of any officer of the courts in his official transactions; and (3) where there has been disobedience or resistance by any officer, party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the courts. As thus seen, the power of these courts in the punishment of contempts can only be exercised to insure order and decorum in their presence, to secure faithfulness on the part of their officers in their official transactions, and to enforce obedience to their lawful orders, judgments, and processes."

In the case before us Atwell could be held liable as a juror only under the terms of the third paragraph above set forth, and only then, it seems to us, upon the assumption that, having been once a juror, he remains always such; for it is undisputed that he did not make his disclosure at Charlotte until two months after he had been finally discharged from service as grand juror at Statesville. We cannot convince ourselves that this assumption is sound. On the contrary, there are several reasons to hold otherwise. A grand jury is only impanel-

ed to make preliminary investigations of those things committed to its charge. These investigations require, in ordinary practice, but a few days each term to complete. The members are then discharged, and by the terms of section 812, Rev. St. (U. S. Comp. St. 1901, p. 627), as modified by Act June 30, 1879, c. 52, § 2, 21 Stat. 43 (U. S. Comp. St. 1901, p. 624), a juror who has thus served a term should not be allowed to serve again until after the lapse of one year. But if the oath should be held to require perpetual secrecy on the part of such juror, and even if he might subject himself to prosecution for perjury because of its violation, he is nevertheless shielded, we think, from the power of the court to attach him for contempt so soon as the court has discharged him from further service.

We can well understand how a trial judge, who is charged with the responsibility of securing a fair and impartial enforcement of the law, should be exceedingly anxious to use all means within his power to prevent the slightest interference with the administration of justice on the part of any one who may show a disposition to unduly oppress the citizen, or, on the other hand, through sympathy or a misguided notion as to his duty, attempt to do any thing calculated to hinder or embarrass the court in the due administration of justice. We fully appreciate that the learned judge before whom the matters involved in this case were pending felt that he was charged with a grave duty to protect the proper administration of the law, and that the matter had his closest scrutiny. The questions involved were, however, as we have indicated, almost wholly new, and, while we have felt constrained to dissent from his judgment, we have been led to do so only after a long and earnest consideration.

The judgment of the court below must be reversed, and the case remanded, with directions to discharge the rule.

Reversed.