STATE of Indiana, Appellant (Plaintiff Below),

v.

William HELTZEL and Mark Kiesling, Appellees (Defendants Below).

No. 45A03–8802–CR–54.

Court of Appeals of Indiana, Third District.

Jan. 23, 1989.

Rehearing Denied March 20, 1989.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, John F. Crawford, Jr., Pros. Atty., Michael S. Vass, Deputy Pros. Atty., Crown Point, for appellant.

David C. Jensen, Richard A. Hanning, Charles W. Webster, Eichhorn, Eichhorn & Link, Hammond, for appellees.

HOFFMAN, Judge.

Appellant State of Indiana appeals a dismissal of a complaint for indirect contempt.

The information for indirect contempt of court, filed by the Lake County prosecutor, reads in pertinent part:

"[O]n or about the 31st day of July, A.D.1987, ... MARK KIESLING AND WILLIAM HELTZEL induced or attempted to induce DENNIS LONG ... and RICKY MOYETT ..., members of the regular Lake County Grand Jury, duly sworn to secrecy and impaneled by the Honorable James C. Kimbrough, Judge, Lake Superior Court, Criminal Division, on July 18, 1984, to disclose evidence given or proceeding had, or to disclose what DENNIS LONG or RICKY MOYETT may have said or what any other Grand Juror may have said or to disclose in what manner DENNIS LONG, RICKY MOYETT or any other Grand Juror may have voted on a matter before the Lake County Grand Jury."

The affidavit filed with the information alleged that Hammond Times newspaper reporter Mark Kiesling asked former grand juror Dennis Long questions concerning grand jury evidence and how the grand jury voted. Reporter Kiesling allegedly told former grand juror Long that the information was public and could be divulged. The affidavit further alleged that Hammond Times reporter William Heltzel asked former grand juror Ricky Moyett questions concerning grand jury evidence and how the grand jury voted. Reporter Heltzel allegedly told former grand juror Moyett that it was all right to give the information because Heltzel already had the information.

██ At the outset, it should be noted that this case does not involve prior restraint or contempt for publication. The defendants have not demonstrated a First Amendment right of access or a particularized need for the grand jury evidence or votes. A compelling interest showing by the State is not required. This controversy does center on whether the trial court erred in dismissing a complaint for indirect contempt when newspaper reporters allegedly induced or attempted to induce former grand jurors to reveal secret grand jury evidence, deliberations and votes.

██ Contempt of court is neither civil, criminal nor equitable for the reason that the right to exercise this power is inherent with Indiana courts. It is a purely judicial power and is not the creature of legislation and is inalienable and indestructible. *State v. Heltzel* (1988), Ind.App., 526 N.E.2d 1229, 1230. Under the inherent power theory, the statutory definitions of contempt are not so all-inclusive as to exclude other acts or conduct which may constitute contempt. *LaGrange etc. v. State* (1958), 238 Ind. 689, 694, 153 N.E.2d 593, 596.

██ In this case, the defendants were charged with indirect contempt, which arises from actions outside the presence of the court. Indirect contempt includes disobeying an order or process, resisting process, intimidating a witness, and the false or inaccurate report of a pending court proceeding. IND.CODE § .34-4-7-3, 4 and 5 (1982 Ed.).

██ The judiciary's inherent power of contempt may be invoked when the offending act impedes or disturbs the administration of justice. The questioning of former grand jurors about secret grand jury evidence, deliberations and votes invades the sanctity of the grand jury, offends the administration of justice and impairs the operation of court proceedings.

Grand jury secrecy is deeply rooted in the traditions of Anglo–American law. Calkins, *Grand Jury Secrecy* 63 Mich.L. Rev. 455, 457 (1965). The proper functioning of the grand jury system depends upon the secrecy of grand jury proceedings. *Douglas Oil Co. of Cal. v. Petrol Stops, etc.* (1979) 441 U.S. 211, 218–219, 99 S.Ct. 1667, 1672–73, 60 L.Ed.2d 156. In Indiana, grand jurors swear or affirm to the following:

"that you will not disclose any evidence given or proceeding had before the grand jury; that you will keep secret whatever you or any other grand juror may have said or in what manner you or any other grand juror may have voted on a matter before the grand jury."

IND.CODE § 35–34–2–3(e) (1987 Supp.).

Disclosure of grand jury proceedings is regulated by IND.CODE § 35–34–2–10 (1987 Supp.):

"(a) Except when required to do so by law, a person who has been present at a grand jury proceeding and who knowingly or intentionally discloses:

(1) any evidence or testimony given or produced;

(2) what a grand juror said; or

(3) the vote of any grand juror;

to any other person, except to a person who was also present or entitled to be present at that proceeding or to the prosecuting attorney or his representative, commits unauthorized disclosure of grand jury information, a Class B misdemeanor.

(b) The transcript of testimony of a witness before a grand jury may be produced only:

(1) for the official use of the prosecuting attorney; or

(2) upon order of:

(A) the court which impaneled the grand jury;

(B) the court trying a case upon an indictment of the grand jury; or

(C) a court trying a prosecution for perjury;

but only after a showing of particularized need for the transcript."

In *United States v. Proctor and Gamble Co.* (1958) 356 U.S. 677, 681–682, n. 6, 78 S.Ct. 983, 986, n. 6, 2 L.Ed.2d 1077, the United States Supreme Court stated that the policies for grand jury secrecy were correctly summarized in *United States v. Rose* (1954) 215 F.2d 617, 628–629:

" '(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.' "

Of paramount importance is the maintenance of secrecy concerning the deliberations and votes of the grand jurors, both during and subsequent to a hearing. The citizen who assumes this high and responsible duty must be assured that the law will not permit him to be subjected to the malice and consequent injury that might result from an accused neighbor's knowledge that he advocated and voted for the latter's indictment. Few, if any, courts have broken the seal of secrecy in this regard, and its permanence exists even after the indictment has been returned, the accused apprehended, and the grand jury discharged. Calkins, supra, at 459.

The alleged attempt to induce grand jurors to violate a grand jury secrecy order impedes the functioning of the grand jury system and undermines the important policies supporting grand juror secrecy.

The alleged solicitation of information concerning secret grand jury evidence, deliberations and votes from former grand jurors rises to the level of actionable contempt. The trial court erred in dismissing the information.

REVERSED.

STATON, J., concurs.

RATLIFF, C.J., concurs with opinion.

RATLIFF, Chief Judge, concurring.

Preservation of grand jury secrecy is essential to the proper functioning of the grand jury system. The reasons for strict maintenance of such secrecy are cogently and succinctly stated in the quotation from *United States v. Proctor and Gamble Co.* (1958), 356 U.S. 677, 681–82, n. 6, 78 S.Ct. 983, 986, n. 6, 2 L.Ed.2d 1077 quoting from *United States v. Rose* (1954), 215 F.2d 617, 628–29, set forth in the majority opinion. Equally important and absolutely necessary to the preservation of grand jury se-

crecy is the protection of individual grand jurors from harassment, intimidation, and efforts to induce them to violate their oath of secrecy. This is especially true in this case where the the alleged inducements involved flagrant misrepresentation.

The contempt power is an important weapon in the court's arsenal to protect grand jurors and to preserve grand jury secrecy. Although the contempt power should not be used indiscriminately, the matters alleged here, if established, render appropriate resort to the awesome power of contempt to preserve grand jury secrecy and protect members of grand juries. That the grand jury session here involved had been concluded does not give persons, even though members of the press, a license to induce or attempt to induce grand jurors to break their vow of secrecy and to destroy grand jury secrecy.

The fact that the Supreme Court of the United States has recognized the necessity of preserving grand jury secrecy rebuts appellee's arguments that their First Amendment rights were violated by the contempt proceedings in this case. The trial court's dismissal of the contempt information based on First Amendment grounds was erroneous.

For the reasons stated herein as well as those stated by Judge Hoffman, I concur.