**STATE of Indiana, Appellant,**

v.

**William HELTZEL and Mark
Kiesling, Appellees.**

No. 45S03–9003–CR–225.

Supreme Court of Indiana.

March 27, 1990.

Linley E. Pearson, Atty. Gen., Indianapolis, John E. Crawford, Jr., Pros. Atty., Crown Point, for appellant.

David C. Jensen, Richard A. Hanning, Charles W. Webster, Eichhorn, Eichhorn & Link, Hammond, for appellees.

James P. Fenton, Barrett & McNagny, Fort Wayne, for amici curiae Journal–Gazette Co., Home News Enterprises, Nixon Newspapers, Inc., South Bend Tribune, WSBT Stations, Inc., and Inland Press Ass'n.

Richard L. Rennick, Jr., Chairman, Indiana Pros. Attys. Council, Covington, Stephen J. Johnson, Indiana Pros. Attys. Council, Indianapolis, for Indiana Prosecuting Attorneys Council.

Marce Gonzalez, Jr., Cooperating Atty., Indiana Civil Liberties Union, Hilbrich, Cunningham & Schwerd, Highland, Richard A. Waples, Legal Director, Indiana Civil Liberties Union, Indianapolis, for amicus curiae Indiana Civil Liberties Union.

Edward O. DeLaney, Jan M. Carroll, Barnes & Thornburg, Indianapolis, for amici curiae Indianapolis Newspapers, Inc., American Soc. of Newspaper Editors, Reporters Committee for Freedom of Press, Soc. of Professional Journalists and Indiana University School of Journalism.

Richard W. Cardwell, Ober, Symmes, Cardwell Voyles & Zahn, Indianapolis, for Hoosier State Press Ass'n.

DeBRULER, Justice.

William Heltzel and Mark Kiesling were charged with indirect contempt of court, I.C. 34–4–7–3 through –5, in an information filed by the Lake County Prosecutor in August of 1987. At the time, Heltzel and Kiesling were reporters for the Hammond Times, and the contempt charges grew out of their questioning of two men who had served on a grand jury which had been impaneled on July 18, 1984, and discharged in January of 1985. The information charged that on or about July 31, 1987, Heltzel and Kiesling did

unlawfully induce or attempt to induce a Grand Juror to violate the secrecy order of [the] [c]ourt [in that they] induced or attempted to induce DENNIS LONG ... and RICKY MOYETT, ... members of the regular Lake County Grand Jury, duly sworn to secrecy and impaneled ... on July 18, 1984, to disclose evidence given or proceeding had, or to disclose what DENNIS LONG or RICKY MOYETT may have said or what any other Grand Juror may have said or to disclose in what manner DENNIS LONG, RICKY MOYETT or any other Grand Juror may have voted on a matter before the Lake County Grand Jury....

The gravamen of the complaint is found in the accompanying affidavit, in which it was alleged that Kiesling coerced Long to break his oath of secrecy by telling him that what was being sought was public information and could be divulged and that Heltzel induced Moyett to break his oath by telling him that he already had the desired information and therefore it would be all right to discuss it.

The reporters filed a motion to dismiss the charges on the grounds that the facts alleged, even if true, did not constitute indirect contempt of court. The court heard arguments on the dismissal motion and ruled that the court had the inherent authority to enforce its orders through its contempt powers, even against non-parties, for actions occurring outside the presence of the court and regardless of any statutory limits placed on the power by the legislature. The court then directed the parties to argue the First Amendment implications of the issue. After briefs were filed and arguments were heard on the First Amendment issue, the court ruled that the State had "failed to establish a compelling interest to justify the sanction of indirect criminal contempt" against the reporters. The State's motion to correct errors was denied and the State appealed.

The Court of Appeals reversed the decision of the trial court and held that the maintenance of secrecy concerning grand jury deliberations and voting, both during and after a hearing, are "of paramount importance." *State v. Heltzel* (1989), Ind. App., 533 N.E.2d 159, 161. The Court noted that inducing grand jurors to violate a secrecy order "impedes the functioning of the grand jury system and undermines the important policies supporting grand juror secrecy," and went on to state that "[t]he

alleged solicitation of information concerning secret grand jury evidence, deliberations and votes from former grand jurors rises to the level of actionable contempt." *Id.* The Court did not address the First Amendment considerations of the case until it delivered its opinion on petition for rehearing. *State v. Heltzel* (1989), Ind. App., 535 N.E.2d 1221. In the first decision, it noted that because the case did not involve prior restraint or contempt for publication, the State did not have to demonstrate a compelling interest to support a finding of contempt. *Heltzel*, 533 N.E.2d at 160. On petition for rehearing, the Court noted that the First Amendment does not give the press a special right of access beyond that of the ordinary citizen, that First Amendment rights do not include an unrestrained right to speak and publish and that, therefore, the trial court erred in dismissing the contempt charges on First Amendment grounds. *Heltzel*, 535 N.E.2d at 1222. We grant transfer.

In reviewing a motion to dismiss, we apply the same standard as the trial court; that is, assuming the facts alleged in the information to be true, the charge will be dismissed if the facts do not constitute the offense charged. *Smith v. State* (1960), 241 Ind. 311, 170 N.E.2d 794; I.C. 35–34–1–2 through –6. In this regard, it should be noted that appellants were not charged with inducing or causing a violation of I.C. 35–34–2–10, which makes it a class B misdemeanor for a person present at grand jury proceedings to knowingly and intentionally disclose evidence given, what a grand juror said, or how a grand juror voted. The resolution of the issue before us does not require us to address the validity of that statute, and we assume for the sake of the discussion here that the statute is constitutionally valid. Because the facts here allow the resolution of the present case on narrower grounds, the question of whether a statute which forever bans the disclosure of grand jury information by those involved in the proceedings is impermissibly overbroad will have to await another day.[1]

The State has instead charged appellants with indirect contempt of court and is apparently proceeding on an accomplice theory. It argues that those who facilitate contempt violations are themselves guilty of contempt and analogizes to the aiding and abetting statute, I.C. 35–41–2–4, which extends culpability to the accomplices of those who commit crimes. Contempt, however, is not a criminal offense. It is a *sui generis* proceeding neither civil nor criminal in nature, although both of those labels are used to describe certain categories of contempt. The aiding and abetting statute applies only to "an offense," which is defined as a crime, I.C. 35–41–1–19, which, in turn, is defined as a felony or a misdemeanor, I.C. 35–41–1–6. Furthermore, to be convicted under an accomplice theory, the State must prove that the target crime was committed. The State contends here that the grand jurors committed the target "crime" of contempt by breaking their oaths of secrecy. However, while there may be occasions where breaking one's oath so impedes the administration of justice that it rises to the level of contempt, the usual remedy for grand jurors who violate this duty is discharge from the grand jury panel. I.C. 35–34–2–3(c). The accomplice theory of culpability is not a viable means of finding one guilty of contempt. One's actions either rise to the level of actionable contempt or fail to rise to that level. It is conceivable, therefore, that the reporters' actions, in and of themselves, were contemptuous. In other words, we must examine not whether the reporters' actions induced others to commit contemptuous acts, but whether their own actions rose to the level of actionable contempt.

Criminal contempt is not always readily distinguishable from civil contempt, *see* 17 C.J.S. *Contempt* § 5(2), but it is generally

---

1. It should be noted at this juncture that this decision was rendered without consideration of *Butterworth v. Smith,* (1990) —— U.S. ——, 110 S.Ct. 1376, 108 L.Ed.2d 572. In *Butterworth,* the United States Supreme Court addresses the First Amendment implications of a Florida statute which permanently barred grand jury witnesses from disseminating information already within their personal knowledge prior to being called to testify before the grand jury.

regarded as an act directed against the dignity and authority of the court which obstructs the administration of justice and which tends to bring the court into disrepute or disrespect, 17 C.J.S. *Contempt* § 5(1). Direct criminal contempt charges are generally reserved for acts which are committed in the presence of the court or in such close proximity to it so as to disrupt its proceedings while in session. 6 I.L.E. *Contempt* § 2 (1958). Indirect criminal contempt is an act committed outside the presence of the court "which nevertheless tends to interrupt, obstruct, embarrass or prevent the due administration of justice." *Id.* As noted, the reporters here were charged with indirect criminal contempt, and they argue that in making the determination of whether their actions, if proven true, would rise to the level of actionable contempt, the court is obligated to apply the First Amendment standards associated with prior restraint of publications.

■ These standards dictate that the state may not punish or suppress the publication of truthful information without first demonstrating a compelling state interest of the highest order, specifically that the perceived threat to the administration of justice is extremely serious and the degree of its imminence is extremely high. *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 845, 98 S.Ct. 1535, 1544, 56 L.Ed.2d 1, 14 (1978). This has come to be known as the "clear and present danger" test. *Id.* The reporters correctly assert that decisions of the United States Supreme Court have extended this First Amendment protection to news gathering activities of the press. The high Court noted in *Branzburg v. Hayes,* 408 U.S. 665, 681, 92 S.Ct. 2646, 2656, 33 L.Ed.2d 626, 639 (1972), that "without some protection for seeking out the news, freedom of the press could be eviscerated." However, none of the cases dealing with the extension of the First Amendment to news gathering activities suggests that protection extends to unlawful acts. In discussing a West Virginia statute which made it unlawful to publish the name of a juvenile offender, the Supreme Court stated that *"[i]f the information is lawfully obtained, ...*

the state may not punish its publication...." *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 104, 99 S.Ct. 2667, 2671, 61 L.Ed.2d 399, 405 (1979) (emphasis added). We draw the obvious conclusion that unlawful news gathering activities are not protected under the First Amendment. We further conclude that the type of knowing conduct alleged in the charging information is just such an unprotected activity. Therefore, under the circumstances here, the trial court was incorrect in ruling that the State was required to show a compelling state interest before the reporters could be found in contempt of court.

■ Our inquiry does not end there, however. The reporters' acts, even if found to be true as alleged, do not amount to indirect criminal contempt. The Court of Appeals was correct in pointing out that maintaining grand jury secrecy is of great importance. The policies protected by grand jury secrecy include preventing the escape of those who may be indicted, preventing attempts to influence grand jurors or witnesses, encouraging free disclosures by those who have information about crimes, and protecting the innocent accused who is later exonerated. *United States v. Procter and Gamble Co.,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). These concerns are, quite obviously, at their peak while the grand jury is in the process of hearing testimony, deliberating and voting. Once the proceedings are over and the grand jurors have been discharged, however, the need to protect these policies falls off dramatically. While there is case law from other jurisdictions which suggests that such concerns cease altogether at the close of grand jury proceedings, *see, e.g., Atwell v. United States,* 162 F. 97 (4th Cir.1908), we do not believe that such an unequivocal line can be drawn with certainty and finality. The wide variety of facts and circumstances which are the substance of grand jury proceedings suggests that the line between what does or does not impede the administration of justice is uncertain and wavering and that courts must draw it as best they can on a case-by-case basis. What is certain is that, under the

facts and circumstances here, the reporters' questioning of grand jurors two years after the close of the grand jury proceedings did not impede the administration of justice. We therefore uphold the ruling of the trial court dismissing the contempt charges against appellants Heltzel and Kiesling. The reporters here have not been charged with criminal wrongdoing and their actions were not contemptuous.

The opinions of the Courts of Appeals are vacated, and the order of the trial court dismissing the charges of contempt is affirmed.

SHEPARD, C.J., and DICKSON, J., concur.

GIVAN, J., dissents with separate opinion, in which PIVARNIK, J., concurs.

### ON CRIMINAL PETITION TO TRANSFER

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in this case. I believe the Court of Appeals' opinion to be correct and would adopt it in its entirety. *See State v. Heltzel* (1989), Ind.App., 533 N.E.2d 159, *reh'g. denied,* Ind.App., 535 N.E.2d 1221.

At page five of its opinion, the majority concedes that what the reporters did in this case in fact was a crime. Nevertheless, they hold that because the act occurred long after the grand jury had been discharged, the interest of gathering news overrode the interest of the State in preserving inviolate the grand jury proceedings.

I cannot agree with such a rationalization. Protecting First Amendment rights is always of paramount consideration. However, when members of the news media flagrantly commit a crime to gather news and, as in this case, deliberately mislead the former grand jurors in an endeavor to persuade them to consent to be interviewed, it is a wholly intolerable situation.

For that reason, I would deny transfer in this case.

PIVARNIK, J., concurs.