FILED

Dec 23 2019, 5:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Kevin Wild
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Antonio Buford,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | December 23, 2019<br><br>Court of Appeals Case No.<br>19A-CR-956<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Barbara Cook<br>Crawford, Judge<br><br>Trial Court Cause No.<br>49G01-1806-F3-20993 |

**Brown, Judge.**

[1] Antonio Buford appeals the trial court's contempt finding and his sentence for domestic battery as a level 6 felony. We affirm in part and reverse in part.

## *Facts and Procedural History*

[2] In 2018, Buford and E.C., who had a child together, were in a relationship. E.C. visited Buford at his home during a weekend in June, they consumed alcohol, and a violent argument ensued during which Buford punched E.C. in the eye while she was holding their infant son. When E.C.'s parents picked her up, she had a "busted lip" and bruises on her forearm, and the left side of her cheek was bruised and swollen. Transcript at 72. The State charged Buford as amended with counts of criminal confinement as level 3, level 5, and level 6 felonies, strangulation as a level 6 felony, two counts of domestic battery as level 6 felonies, and criminal recklessness as a level 6 felony under cause number 49G01-1806-F3-20993 ("Cause No. 20993"). It also alleged that he was an habitual offender.

[3] On July 16, 2018, the court issued a no contact order that prohibited Buford from having contact with E.C. "in person, by telephone or letter, through an intermediary, or in any other way, directly or indirectly." Appellant's Appendix Volume II at 52. On February 26, 2019, the State filed a Notice of Intent to Offer Out-Of-Court Statements and, in arguing for the admission of hearsay and testimonial statements "made by [E.C.] to her mother, step-father, Officers, and Detective," indicated: in preparation for trial it had listened to numerous jail calls Buford made to his mother, S.B., that during the calls Buford and S.B. discussed aspects of the case including court dates, that Buford

spoke to E.C. in the more-recent calls, and that it believed E.C. may not appear at the scheduled trial based on the content of the calls. *Id.* at 138. It also filed on the same day a Notice of Intent to Offer Potential 404(B) Evidence and indicated that it would present evidence "in the form of a jail call from February 25th, 2019[,] where [Buford] states explains [sic] to his mother that he has been through the Court process before and the girl didn't come [to Court][1], so the case was thrown out" to establish "motive, intent, preparation, and/or plan to absent [E.C.] from trial." *Id.* at 152.

[4]     On March 4, 2019, the court addressed the State's notices of intent before commencing the scheduled jury trial. The State presented the testimony of S.B., who indicated she was Buford's mother, identified her phone number, and answered affirmatively when asked whether he calls her from the Marion County Jail and whether "we discussed in the deposition that it is more than ten (10) times." Transcript at 12. Indianapolis Metropolitan Police Detective Matthew Engelmann testified that he served E.C. in person with a subpoena to appear in court, that he implied it was "for the trial" when he spoke with her, that he served the subpoena at S.B.'s address which he indicated was also E.C.'s residence at the time, and that E.C. signed the subpoena indicating that she understood. *Id.* at 14. After listening to recordings of three telephone conversations, the court allowed the State to present a redacted recording of a

---

[1] The notice includes the phrase, "to Court," within brackets. Appellant's Appendix Volume II at 152.

February 25th conversation between Buford and S.B.[2] and a recording of a January 3rd conversation in which S.B., after speaking with Buford, handed E.C. the phone.

[5] At the trial and in the presence of the jury, the court admitted State's Exhibits 13 and 14, which Detective Engelmann identified as recordings and logs for calls made from the Marion County Jail. A line item in State's Exhibit 13 indicates that a single outgoing call took place on January 3, 2019.[3] The court also admitted State's Exhibit 15, which Detective Engelmann agreed was a redacted version of "portions of the calls that we discussed that are relevant to this case." Transcript at 92. He indicated that he determined Buford made the calls "[b]ased on the context of some of the conversations [Buford] was having" and that he was able to, and did recognize, the voices of E.C. and S.B. on the calls. *Id.* State's Exhibit 15 was published to the jury after the State moved to publish "the . . . (inaudible) that was ruled on in Pre-trial." *Id.* at 95.

[6] The jury found Buford guilty of one count of domestic battery as a level 6 felony and not guilty of the other offenses. After the verdict, the court indicated that evidence had been presented of a violation of the no contact order which had occurred outside of its presence, set a Rule to Show Cause Hearing on why

---

[2] Later, the court further redacted the recording to exclude the conversation's last sentence "where he talks about [sic] he had been in that last situation before with another woman," which it found to be more prejudicial than probative. Transcript at 47.

[3] State's Exhibit 13 includes numerous line items, only one of which lists an outgoing call on the date "20190103." Exhibits Volume at 95.

Buford should not be held in contempt for violating its order, and instructed the prosecutor to bring to the hearing a copy of the redacted version of the jail calls.

[7] On March 7, 2019, the court held a rule to show cause hearing, at which it admitted into evidence the CD it had requested, took judicial notice of its entry of the no contact order, and stated that during trial it had learned that "not only did [Buford] send a letter to [E.C.], as evidence [sic] the redacted telephone calls," but he also had conversations with her, instructed S.B. to give particular directions to E.C., and had conversations with S.B. "with regard to directing [E.C.] having to do with the facts of the case." *Id.* at 180.

[8] The court then asked: "Mr. Buford, is there any information that you want to give me that might bear on my decision with regard of [sic] me holding you in contempt for violating the [c]ourt's order?" *Id.* Buford's counsel answered she would like to state, "before [Buford] answers the question," that additional charges were pending, mentioned an Obstruction of Justice charge "for directly telling [E.C.] not to come to Court" and an undetermined number of charges for Invasion of Privacy attached to the first charge, and requested to stay the hearing or to "set out to track with the new case" "knowing that [Buford] knows that these charges are pending and at this point he has a fifth (5th) amendment right not to incriminate himself regarding those charges." *Id.* at 180-181. She also stated "[i]t is in MC status right now," indicated that "the charges will be formerly [sic] filed this week," and expressed a concern for a potential double jeopardy issue. *Id.* The court stated there was no double jeopardy issue, that its ruling had to do with Buford's contact in the first place,

the substance of which was not relevant, and that "he's not going to be punished or held accountable for two (2) separate acts or for the same act twice." *Id.* at 182. **(181)** The State noted that, if the court were to "find[] it as a punitive act," it would then "not file the Invasion of Privacy for January 3, 2019" and indicated that it had other Invasions of Privacy counts to bring regardless of the ruling. *Id.* The court stated: "Mr. Buford you have blatantly without any regard of the Court's order disrespected the Court and held the Court's order in distained [sic] and to ensure that there is no further violation of the Court's order [t]he court is going to find you in contempt of the no contact order that was issued." *Id.* at 183. After ordering a sanction of ninety days in the Marion County Jail "at this time as a coercive measure," the court asked if there was anything else from the State and Buford's counsel, who answered "No Judge" and "No Your Honor," respectively. *Id.* The court's contempt minute sheet states "Sanctions ordered[:] 90 day (flat)." Appellant's Appendix Volume III at 78.

Also on March 7, 2019, the State charged Buford under cause number 49G01-1903-F5-8877 ("Cause No. 8877") with obstruction of justice as a level 5 felony and seven counts of invasion of privacy as class A misdemeanors under Ind. Code § 35-46-1-15.1(a)(5),[4] including Count II which alleged that Buford did knowingly or intentionally violate a no contact order under Cause No. 20993,

---

[4] Ind. Code § 35-46-1-15.1(a)(5) provides that a person who knowingly or intentionally violates a no contact order issued "as a condition of pretrial release . . . or pretrial diversion" commits a class A misdemeanor.

which was issued to protect E.C., on or about January 3, 2019. The affidavit for probable cause stated:

> Detective Engelmann reviewed jail calls made by Mr. Antonio Buford.
>
> \* \* \* \* \*
>
> On 1/3/19 at 10:44 AM, Mr. Buford made another call . . . . [S.B] was speaking to Mr. Buford when [E.C.] presumably walked into the room, as [S.B.] told him, 'Here she comes.' A female voice comes on the line that Detective Engelmann recognized to be consistent with the voice of [E.C.] based on his prior knowledge of speaking with her.

Cause No. 8877, Affidavit for Probable Cause.

[10]  On March 21, 2019, in Cause No. 20993 the court held a sentencing hearing, at which it indicated that it had reviewed the presentence investigation report ("PSI") and found that "there are mitigating circumstances and he has participated in programs that were available to him at the jail." Transcript at 194. It noted that Buford had been through Anger Management before and had been afforded a number of programs both as a juvenile and an adult, and found that the aggravating factors outweighed the mitigating factors. Regarding aggravating factors, it indicated it found

> that his criminal behavior since the time he was thirteen (13) has been one (1) of repeated offenses involving violence. Several of them have involved Domestic Violence specifically. In addition, there was a violation of the No Contact Order during the time that this case was pending. The Court also finds that to be an aggravating factor. The offense that was charged here was

> Domestic Battery in the Presence of a Child less than Sixteen Years of Age. So, while I understand the State's argument about being in a committed relationship with the mother of this child; the fact that this incident happened while a child was present for the Court is also an aggravating factor.

*Id.* The court sentenced Buford in Cause No. 20993 to two-and-one-half years in community corrections in the work release component for his conviction for domestic battery. On May 31, 2019, the court sentenced him in Cause No. 8877 to one year suspended under Count II, which it ordered to be served consecutive to a four-year sentence he received under Count I of that cause and the sentence under Cause No. 20993. **(Sentencing Order)**

## Discussion

[11] Buford first argues that the sanction for contempt ordered by the trial court was improper. He contends that the contempt hearing involved criminal contempt. The State does not dispute this characterization.

[12] Contempt is a "*sui generis* proceeding neither civil nor criminal in nature, although both of those labels are used to describe certain categories of contempt." *State v. Heltzel*, 552 N.E.2d 31, 33 (Ind. 1990). Contempt proceedings may be generally categorized as civil or criminal, according to the nature and purpose of the sanction imposed. 6 I.L.E. *Contempt* § 5 (2000). *See also In re Contempt of Wabash Valley Hosp., Inc.*, 827 N.E.2d 50, 61 (Ind. Ct. App. 2005). A civil contempt is a violation of a court order resulting in a proceeding for the benefit of the aggrieved party. *Nat'l Educ. Ass'n v. South Bend Cmty. Sch.*

*Corp.*, 655 N.E.2d 516, 522 (Ind. Ct. App. 1995). As such, any type of penalty in a civil contempt proceeding must be coercive or remedial in nature. *Id.*

[13] By contrast, criminal contempt actions are punitive and are carried out in response to "an act directed against the dignity and authority of the court which obstructs the administration of justice and which tends to bring the court into disrepute or disrespect." *In re A.S.*, 9 N.E.3d 129, 132 (Ind. 2014) (quoting *Heltzel*, 552 N.E.2d at 34). Accordingly, a criminal contempt sanction is punitive in nature "because its purpose is to vindicate the authority of the court, and it benefits the State rather than the aggrieved party." *Jones v. State*, 847 N.E.2d 190, 199 (Ind. Ct. App. 2006) (citing *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 826-828, 114 S. Ct. 2552 (1994)), *reh'g denied*, *trans. denied*.

[14] Initially, we review the State's notices of intent as it argued for the admission of out-of-court statements and 404(B) evidence and find that the State mentioned Buford's violations of the court's no contact order in anticipation of trying Cause No. 20993. *See* Appellant's Appendix Volume II at 134, 138, 152. We additionally note Detective Engelmann's testimony at the pretrial hearing and the trial court's subsequent reprimand of disrespect toward it and find that, although the court later stated that it imposed the contempt sanction as a coercive measure, the sanction in substance was punitive in nature inasmuch as it benefitted the State as a whole, and the court sentenced Buford to jail without permitting alternatives to incarceration and without conditioning the sentence. *See McCollum v. Ind. Fam. & Soc. Servs. Admin.*, 82 N.E.3d 368, 375 (Ind. Ct. App. 2017) ("In other words, the contemnor must be given the opportunity to

'purge' the contempt and gain release from prison. Significantly, we have held that 'incarceration for contempt is legally allowable only where the support order upon which release is conditioned is attainable by the obligor.'" (internal citations omitted) (emphasis omitted)); *Reed v. Cassady*, 27 N.E.3d 1104, 1114 (Ind. Ct. App. 2015) ("A jail sentence for civil contempt must be coercive rather than punitive in nature, and, to avoid being purely punitive, a contempt order must offer an opportunity for the recalcitrant party to purge himself or herself of the contempt."), *reh'g denied*, *trans. denied*; *Jones*, 847 N.E.2d at 196, 199 (finding, in a case involving contempt for failure to obey a subpoena to appear for a deposition and a subsequent sanction involving a sentence of imprisonment for "200 days flat," that the contempt was criminal in nature inasmuch as the sanction did not abate upon compliance with the trial court's order and it benefitted the State as a whole).

[15] Having found that the contempt sanction was punitive and thus that the sanction of ninety days in the Marion County jail constituted a punishment, we find that the State's filing, on the same day as the contempt hearing, of Count II concerning the January 3, 2019 invasion of privacy in Cause No. 8877 constitutes double jeopardy concerns. *See Hunter v. State*, 802 N.E.2d 480, 483 (Ind. Ct. App. 2004) ("The test for determining whether a sanction, other than a criminal sentence, constitutes a jeopardy is whether the civil sanction constitutes a punishment.") (citing *D.W. v. State*, 673 N.E.2d 509 (Ind. Ct. App. 1996), *trans. denied*), *trans. denied*. We observe that, despite assuring the court that it would not file the "Invasion of Privacy [count] for January 3, 2019,"

Transcript at 182, the State did precisely that and Buford was convicted and sentenced for that offense. Accordingly, we vacate Buford's contempt finding under this cause.[5]

[16] Buford next argues that the court abused its sentencing discretion in using a material element under Ind. Code § 35-42-2-1.3 as an aggravating factor to support his domestic battery sentence above the advisory level and contends that there is nothing unique about the circumstances of his crime.[6] The State contends that his lengthy criminal record standing alone shows that his sentence is proper.

[17] We review the sentence for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence – including a finding of aggravating and mitigating factors if any – but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by

---

[5] As we vacate the finding of contempt, we need not address Buford's other arguments concerning it.

[6] Buford specifically points to Ind. Code § 35-42-2-1.3(b) which provided at the time of the incident that the offense is a level 6 felony if the person who committed the offense is at least eighteen years of age and committed the offense against a family or household member "in the physical presence of a child less than sixteen (16) years of age, knowing that the child was present and might be able to see or hear the offense."

the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." *Id.* at 490-491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id.*

[18]  A single aggravating circumstance may be sufficient to enhance a sentence. *See Hackett v. State*, 716 N.E.2d 1273, 1278 (Ind. 1999). "Generally, the nature and circumstances of a crime is a proper aggravating circumstance." *Gomillia v. State*, 13 N.E.3d 846, 853 (Ind. 2014). When a trial court improperly applies an aggravator but other valid aggravating circumstances exist, a sentence enhancement may still be upheld. *Hackett*, 716 N.E.2d at 1278. We conclude based on our review of the record that, even if the court considered an improper aggravator, other valid aggravating circumstances, which Buford does not challenge, justify the sentence enhancement. We note that the court, having reviewed the PSI before it, found that his criminal behavior since the age of thirteen included repeated felony offenses involving violence and domestic violence. It also found Buford violated the no contact order as the case was pending. We cannot say that the trial court abused its discretion in sentencing Buford to two-and-one-half years in community corrections for his domestic battery conviction.

[19] For the foregoing reasons, we vacate the finding of contempt and affirm Buford's domestic battery sentence.

[20] Affirmed in part and reversed in part.

Altice, J., and Tavitas, J., concur.