Ruben HINOJOSA, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

Nos. 45S05–0111–CR–590,
45A05–0010–CR–450.

Supreme Court of Indiana.

Jan. 15, 2003.

Nathaniel Ruff, Merrillville, IN, Attorney for Appellant.

Steve Carter, Attorney General, Timothy W. Beam, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**ON PETITION FOR TRANSFER**

SULLIVAN, Justice.

In this case, a police officer seeks grand jury transcripts to substantiate his claim of an official "cover-up" of wrongdoing.  To

obtain them, he must show with particularity a need to prevent injustice that outweighs the reasons for our long-established policy of grand jury secrecy.

### Background

Hinojosa is a nineteen-year veteran of the Hammond Police Department ("Police Department") who was suspended and faced disciplinary proceedings as a result of the following set of circumstances.

On June 26, 1998, a grand jury issued indictments against Hammond Police Officer Thomas Hanna ("Hanna") stemming from what has apparently become known as the "Hanna drunk driving accident incident." After a bench trial, Hanna was convicted of class A misdemeanor intimidation and class B misdemeanor reckless driving charges.

The same grand jury also indicted five other police officers for actions involving an attempted cover-up of Hanna's accident: Donald A. Vicari, Charles C. Bennett, George G. Gavrilos, Ronald M. Gennarelli, and Steven Ridgley. The indictments against these officers were later dismissed because they had not been informed that they were targets prior to testifying before the Grand Jury.

Two weeks after the conclusion of Hanna's trial, the Police Department brought disciplinary charges against Hinojosa for going public with charges that the Police Department had covered up the drunk driving incident. Hinojosa had spoken to the newspaper, had picketed at city hall, and had contacted the Indiana State Police about the Hanna investigation.

On August 16, 2000, Hinojosa filed a petition for production of grand jury transcripts related to the Hanna investigation. He intended to use this evidence to establish his defense at his upcoming disciplinary hearing. The hearing had been set for August 24, 2000. Hinojosa argued that he was entitled to present evidence at his hearing and claimed that the grand jury transcripts were necessary in this regard because they "undoubtedly contain some evidence substantiating [the] claim of a cover up." Hinojosa's confidence as to what the transcripts contained apparently stemmed from the fact that the Grand Jury had returned indictments on the five officers.

On August 22–23, 2000, the trial court held a hearing on Hinojosa's petition. Hinojosa was the sole witness at the hearing. He admitted that the names of the grand jury witnesses were a matter of public record. He further stated that he had deposed the chief of police but had made no effort to depose any of the other witnesses prior to his disciplinary hearing.

The trial court denied Hinojosa's request to release the Grand Jury transcripts on the basis that no Indiana authority permitted disclosure of grand jury testimony to a nonparty to the suit for which the Grand Jury was created. The Court of Appeals reversed, holding Hinojosa was entitled to the transcripts. *Hinojosa v. State*, 752 N.E.2d 107 (Ind.Ct.App. 2001). Judge Barnes dissented. We granted transfer and now generally follow the approach advocated by Judge Barnes. 761 N.E.2d 423 (Ind.2001) (table).

### Discussion

#### I

Hinojosa maintains that the trial court erred in finding that a nonparty cannot have access to grand jury transcripts. *Br. of Appellant* at 6–7. The State does not contest this argument. Accordingly, we assume for purposes of this opinion that a nonparty is not barred in all circumstances from receiving grand jury testimony in Indiana.

#### II

The State contends that Hinojosa failed to establish the "particularized need" for

the grand jury transcripts required by statute, Ind.Code § 35–34–2–10(b) (1998),[1] because he could have acquired the sought-after information through other means. Hinojosa responds that evidence to support a finding of his particularized need for the grand jury transcripts is abundant. *See Brief of Appellant* at 9. As such, we are called upon to interpret the meaning the legislature intended for "particularized need."

■ At the outset, we note that the general rule regarding grand jury transcripts is that they be kept secret. Ind. Code § 35–34–2–4(i) (1998).[2] Indiana does not even recognize an absolute right of the accused to the pre-trial examination of grand jury minutes. *Blackburn v. State,* 260 Ind. 5, 291 N.E.2d 686 (1973), *cert. denied, Blackburn v. Indiana,* 412 U.S. 925, 93 S.Ct. 2755, 37 L.Ed.2d 152 (1973); *Mahoney v. State,* 245 Ind. 581, 201 N.E.2d 271 (1964), *overruled on other grounds by Antrobus v. State,* 253 Ind. 420, 254 N.E.2d 873 (Ind.1970). In fact, it is a criminal offense to "knowingly and intentionally" disclose information acquired in a grand jury proceeding unless compelled by law. Ind.Code § 35–34–2–10(a) (1998). However, the Legislature has created an exception to the general rule of secrecy by granting trial judges the discre-

tion to release evidence in certain circumstances where a "particularized need" can be shown. *See* Ind.Code § 35–34–2–10(b) (1998).

■ When construing the meaning of a statute, our primary goal is to determine the legislature's intent. *Smith v. State,* 675 N.E.2d 693, 696 (Ind.1996), *citing Freeman v. State,* 658 N.E.2d 68, 70 (Ind. 1995). Undefined words in a statute are given their plain, ordinary, and usual meaning, unless the construction is plainly repugnant to the intent of the legislature or of the context of the statute. Ind.Code § 1–1–4–1(c). We review a trial court's grant or denial of a petition to release grand jury transcripts for an abuse of discretion. *See State ex rel. Keller v. Criminal Ct. of Marion County,* 262 Ind. 420, 317 N.E.2d 433 (1974).

The history of Ind.Code § 35–34–2–10 indicates that the Legislature intended this provision to limit the acceptable use of grand jury transcripts from a previously more lenient standard.

In 1970, this Court interpreted Ind.Code § 35–1–15–17,[3] a predecessor to today's § 35–34–2–10, as establishing a relatively lenient approach to the use of grand jury testimony. Specifically, we found that use

---

**1.** "The transcript of testimony of a witness before a grand jury may be produced only: (1) for the official use of the prosecuting attorney; or (2) upon order of: (A) the court which impaneled the grand jury; (B) the court trying a case upon an indictment of the grand jury; or (C) a court trying a prosecution for perjury; but only after a showing of particularized need for the transcript."

**2.** "Grand jury proceedings shall be secret, and no person present during a grand jury proceeding may, except in the lawful discharge of his duties or upon written order of the court impaneling the grand jury or the court trying the case on indictment presented by the grand jury, disclose: (1) the nature or substance of any grand jury testimony; or (2)

any decision, result, or other matter attending the grand jury proceeding. However, any court may require any person present during a proceeding to disclose the testimony of a witness as direct evidence in a prosecution for perjury."

**3.** "A member of the grand jury may, however, be required by any court to disclose the testimony of a witness examined before the grand jury, for the purpose of ascertaining whether it is consistent with that given by the witness before the court; or to disclose the testimony given before them by any person upon a charge against him for perjury, in giving his testimony or upon his trial therefor."

of transcripts of grand jury testimony was permitted under the Code for cross-examination and impeachment of witnesses at trial when a proper foundation had been laid. *See Antrobus v. State*, 253 Ind. 420, 430, 254 N.E.2d 873, 878, *citing* Burns' § 9–817, Ind. Acts 1905, ch. 169, § 103; *see also Dinning v. State*, 256 Ind. 399, 269 N.E.2d 371 (1971) (reaffirming the statutory interpretation of *Antrobus* ).

In 1974, the Legislature amended the statute to prescribe that "the transcript of testimony of any witnesses before a grand jury may be produced only upon order of court," but it excepted official use by the prosecuting attorney from this requirement. Pub.L. No. 144, ch. 144; § 3, 1974 Ind. Acts 626; Ind.Code § 35–1–15–16.5.

In 1981, the Legislature again revisited the matter of grand jury testimony. It repealed § 35–1–15–16.5, and replaced it with § 35–34–2–10. Pub.L. No. 298, ch. 298, §§ 3 & 9, 1981 Ind. Acts 2366, 2391. The 1981 statute was very similar to our present statute but with the notable exception that it lacked language requiring particularized need. The requirement of particularized need was added in 1985. Pub.L. No. 312–1985, § 4, 1985 Ind. Acts 2348.

■ Each of the Legislature's changes to the law governing the use of grand jury transcripts has narrowed their availability to an accused while simultaneously affirming the import of grand jury secrecy. Consequently, we do not interpret the inclusion of a particularized need exception as widening the availability of grand jury testimony. Rather, the particularized need exception provides only a limited opportunity for non-prosecutorial use of grand jury transcripts in those instances where the inability to do so would result in injustice.

■ We hold that, in order to take advantage of this provision, Hinojosa must show, with particularity, a need to prevent injustice by providing the requested grand jury transcripts that outweighs the reasons for our long-established policy of grand jury secrecy. *See Hernly v. United States*, 832 F.2d 980, 983 (*citing U.S. v. Procter & Gamble*, 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958)); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959) (detailing the history and the established place of the grand jury in our nation's history.). A showing of mere relevance does not constitute a need to prevent injustice.

■ A party seeking a determination of particularized need does so by a written motion identifying the desired transcripts and including an explanation of the purpose for which the transcripts are to be used. *See Bustamante v. State*, 557 N.E.2d 1313, 1323 (Ind.1990). As the moving party, the requesting party carries the burden of showing that the requested transcripts or portions thereof are limited to materials justified by the particularized need. *See e.g. Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 221, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979).

■ A trial court should take into consideration the various reasons for and public policies protected by grand jury secrecy and the applicability of these policies in the case before it when determining whether the need to prevent injustice outweighs our long-established policy of grand jury secrecy. "The policies protected by grand jury secrecy include preventing the escape of those who may be indicted, preventing attempts to influence grand jurors or witnesses, encouraging free disclosures by those who have information about crimes, and protecting the innocent accused who is later exonerated." *State v.*

*Heltzel,* 552 N.E.2d 31, 35 (Ind.1990) (*citing United States v. Procter Gamble Co.,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958)). The rationale for maintaining grand jury secrecy is strongest when one or more of these reasons or policies are implicated and the requesting party's burden to show need is greatest in these instances. *See Heltzel,* 552 N.E.2d at 35.

Our earlier cases interpreting the now-defunct Ind.Code § 35–1–15–17 (1970) required that all avenues available for discovering information be exhausted before grand jury transcripts shall be released. *See Blackburn v. State,* 260 Ind. 5, 291 N.E.2d 686, 690 (1973) (upholding denial of a defendant's pre-trial motion to examine all testimony given to the Grand Jury upon finding that the defendant failed to "employ pre-trial discovery procedures permitted by our Rules and law"); *Dinning v. State,* 256 Ind. 399, 401–402, 269 N.E.2d 371, 372 (1971) (upholding denial of pre-trial motion for the release of grand jury testimony in anticipation of the cross-examination of witnesses). It should go without saying that grand jury transcripts not available to an accused under the older, more lenient statutes are not now available. Accordingly, we find that a necessary element for establishing a need to prevent injustice is a showing that all reasonable alternative methods of gaining access to the needed information have been exhausted.

A trial court should balance the reasons and policies supporting grand jury secrecy against the exigencies of the matter before it. For example, this Court has observed that the policies supporting grand jury secrecy for a particular grand jury proceeding may decrease with the passage of time following its conclusion. *See Heltzel,* 552 N.E.2d at 35. However, the interests in grand jury secrecy do not disappear under such circumstances. A

determination of how much the secrecy interest is reduced is context specific. In considering the effects of disclosure, "the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries." *See Douglas Oil Co.,* 441 U.S. at 221, 99 S.Ct. 1667. In some circumstances, the release of grand jury transcripts may discourage free disclosures by those who have information about crimes. *Id.*

In the present matter, Hinojosa's claim that he has shown a particularized need for the release of grand jury transcripts consists of his contentions that State based its case, in part, on the testimony of grand jury participants and his belief that the attorneys for the Hammond Police Department will not allow any discovery as to what happened that night. *Brief of Appellant* at 10–11. Hinojosa further believes that access to grand Jury testimony will produce evidence substantiating his claims of a cover-up and of bad faith on the part of city officials. *Brief of Appellant* at 11. The State maintains that there is insufficient evidence to maintain a finding of particularized need and points out that Hinojosa stated that he made no attempt to subpoena or depose the individuals for whom he has requested testimony.

The trial court did not make a finding in regard to whether Hinojosa has established a particularized need for the pretrial release of grand jury transcripts under Ind.Code § 35–34–2–10(b). The existence of particularized need is a fact intensive inquiry best performed by a trial judge. The trial court is in the best position to make a determination regarding the existence of particularized need in this matter.

### Conclusion

Having previously granted transfer pursuant to Ind. Appellate Rule 58(A), there-

by vacating the opinion of the Court of Appeals, we now remand this case to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.