## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 16 2016, 7:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Phillip M. Geans,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

September 16, 2016

Court of Appeals Case No.
71A04-1512-CR-2341

Appeal from the St. Joseph Superior Court

The Honorable Jerome Frese, Judge

Trial Court Cause No.
71D03-1312-MR-14

**Najam, Judge.**

## Statement of the Case

Phillip M. Geans appeals his conviction, following a jury trial, for murder, a felony. On appeal he raises two issues:

1. Whether the trial court abused its discretion when it denied his motion to exclude witnesses from testifying at his trial.

2. Whether the trial court abused its discretion when it denied his motion for a mistrial.

We affirm.

## Facts and Procedural History

On January 11, 1988, sixteen-year-old Theresa Burns was killed in her home. She had come home during a break in her school schedule and was talking to her boyfriend, Shawn Matthews, on the telephone. Matthews heard Burns' doorbell ring as he was ending his telephone call with her. When Burns' older brother, Steve, returned to the Burns' home later that evening, he discovered Burns' bleeding and half-naked body on the floor in the home. He called the police who arrived on the scene soon thereafter and found that Burns had no pulse. Burns had been shot six times in the head, which had caused her death. The police collected samples and items for a sexual assault kit but later analysis showed no seminal material.

On December 12, the St. Joseph County prosecutor convened a grand jury regarding Burns' death. The State did not identify any potential suspects before

the grand jury, but it called six witnesses, including James Lewis, Jr., Geans' friend, and Keleigh Snider, Geans' step-sister and Lewis' former girlfriend. The State did not call Geans as a witness.

[5] Following the grand jury proceeding, in January of 1989, Mishawaka Police Department Detective Craig Whitfield, the lead investigator into Burns' death, created a report in which he noted that the grand jury did not return an indictment "and were of the opinion that one of several people could be involved in this case." Def. Ex. A. Detective Whitfield, who attended but did not testify at the grand jury proceedings, also noted in his report that there was some confusion as to "who had the weapon" that was used to kill Burns. *Id.* He noted that this confusion was at least somewhat clarified when it was determined that Ron Geyer, one of the witnesses before the grand jury, "was not the person who had the weapon[,] that it was another witness." *Id.*

[6] In 2010, the St. Joseph County Metro Homicide Unit began investigating the case of Burns' death as a "cold case." Tr. at 1072. Based on further examination and testing of the gun used to kill Burns, on December 13, 2013, the State filed an information in the St. Joseph Superior Court charging Geans with Burns' murder.

[7] Geans subsequently attempted to obtain the transcripts of the 1988 grand jury proceedings; however, the State informed him that it could not locate those transcripts. On October 28, 2014, Geans filed a motion requesting the grand jury testimony. In support of that motion, Geans stated that several persons

who testified before the grand jury were also likely to testify for the State in Geans' murder trial, and that the grand jury testimony of those witnesses "may contain exculpatory evidence critical to the defense." Appellant's App. at 124.

[8] At an October 30 pre-trial hearing, the trial court and the parties discussed Geans' motion for the grand jury transcript. The State informed the court that, before it had filed charges against Geans, it had tried unsuccessfully to locate the grand jury transcripts. The State had contacted both the St. Joseph Circuit Court and the reporter who had recorded the grand jury proceedings, but neither could locate the recordings. The State noted that the grand jury proceedings had never been fully transcribed, but the court reporter had taken notes as required by state law. The parties agreed to investigate further into the matter. However, the parties subsequently discovered that no one, including the court reporter, could locate the grand jury recordings.

[9] On September 10, 2015, Geans filed a motion to exclude the testimony of "those persons who testified before the Grand Jury" because he had been denied access to their prior, sworn grand jury statements and he had "reason to believe that the testimony of these witnesses in the present case may not be the same as their prior testimony because of the passage of time and the influence of subsequent publicity and interrogation techniques." Appellant's App. at 61. In its response, the State noted that it was still unable to locate the grand jury transcripts.

[10] At a September 18 pretrial conference, the trial court and the parties discussed at length Geans' motion to exclude testimony of the grand jury witnesses. The State informed the court of its additional efforts to obtain the grand jury recordings but continued to assert that no one was able to locate them. Geans' counsel stated, "We've been led to believe that at least one or two of the people who made statements to the grand jury made statements that were not the same as the ones that they had made to the police [and] certainly are not the same as some of the statements that they have made in recent times." Tr. at 69. Although Geans noted that he had in his possession both the police statements "from twenty years ago" and the more recent statements to police, which he alleged contained conflicts, he did not offer any such police statements or reports into evidence.[1] *Id*. at 68.

[11] Geans' counsel also noted that, after the grand jury proceedings, Lewis had told Geans what Lewis' grand jury testimony had been. However, Geans noted that Lewis' testimony, as told to Geans, differed from the statements Lewis had made to the police. Geans further noted that he believed Lewis' statements to police within "the last three or four years" were also different from Lewis' prior statements to police and/or the grand jury. *Id*. at 71. Specifically, Geans indicated that he needed access to Lewis' grand jury testimony to clarify Lewis' statements about who possessed the murder weapon; Geans believed that Lewis

---

[1] The only police record Geans submitted into evidence is one page of Detective Whitfield's 1989 notes about the grand jury proceedings. Def. Ex. A.

would testify at Geans' trial that Geans alone had access to the gun but that Lewis' prior testimony would show that Lewis also had access to and/or possession of the gun.

[12]   The trial court denied Geans' motion to exclude. The court concluded that "the prosecutor and the State and the Circuit Court made all reasonable efforts to locate and identify any reporter's notes from any grand jury hearings," that the State had "absolutely nothing to do with the loss of the reporter's notes," and that the State had not delayed prosecution from malice or bad motives. *Id.* at 105, 107. The trial court further noted that Geans was "available to have that alleged divergence of testimony of that witness [Lewis] brought forward by way of rebuttal testimony[,] which could be limited to that sole issue." *Id*. at 113. The court also noted that Geans' claim that exculpatory evidence might exist in other witnesses' grand jury testimony was "pure conjecture." *Id*. at 111.

[13]   Geans' jury trial began on September 21. At trial, State witness Thomas Doty testified that he saw both Geans and Lewis handling a revolver "very similar" to the murder weapon at Doty's party approximately two weeks after Burns' death. *Id*. at 714. Lewis also testified at the trial, and he stated that he had observed Geans steal a gun from a friend's house prior to Burns' death and that both Geans and Lewis had handled and shot the gun at a gravel pit around that same time. However, Lewis testified that the only time he had ever handled the gun was at the gravel pit. During Geans' cross-examination of Lewis, Lewis said he had testified before the grand jury but did not recall what his testimony was because his "memory stinks." *Id*. at 748. However, Lewis again denied

that he had ever carried the murder weapon at any time other than at the gravel pit.

[14] On cross examination, Geans also repeatedly asked Lewis whether Lewis had argued with Snider, Lewis' then-girlfriend, soon after Burns' death and whether Lewis had told Snider he would kill her just like he had killed Burns. Lewis alternately denied making the statement and said he did not remember whether he had made the statement. Lewis also testified that he did not remember whether he had previously told the police that he had made that statement to Snider. The trial court then admonished the jury that "a question by an attorney is not evidence. It only becomes relevant if it is answered in a direct way. Then the answer may involve the question as having a meaning in light of the answer. If the question is not answered, it is not evidence." *Id*. at 762. Geans then moved for a mistrial "because of judicial misconduct," *id*. at 763, and that motion was denied.

[15] Geans called Snider[2] as a defense witness. Snider testified that she was frequently around Lewis and Geans in 1988-89 and that she was present when Lewis and Geans took the murder weapon from a friend's house, prior to Burns' death. She testified that Lewis and Geans subsequently both "kinda took turns holding [the gun]" in their possession, that the gun was "with one or it was with the other," and that neither one of them possessed the gun more

---

[2] Keleigh's surname was Wilkins by the time of Geans' trial but, for clarity's sake, we will use the surname she had at the time of Burns' death and the grand jury proceedings, *i.e.*, Snider.

regularly than the other did. *Id.* at 1131-32. She testified that both Lewis and Geans "would take [the gun] out at parties and like show it off." *Id.* at 1134.

[16] Geans also asked Snider if she recalled telling Detective Whitfield after Burns' death that Lewis had told Snider he would kill her like he had killed Burns. Snider did not recall making that statement but testified that: her memory would have been more accurate at the time she initially talked to the police; she would have told the police the truth at that time; she had reviewed the police report from that time; and the report said she made that statement to the police. The trial court then instructed the jury that

> [y]ou may accept an answer a witness gives who is under oath as to whether [she] previously in a past time said a particular thing. If [she] say[s, "]I don't remember saying a particular thing in the past,["] the attorney can give [her] anything to refresh [her] recollection to see if it indeed brings back [her] memory of saying something, a particular thing.

> \* \* \*

> If a witness has a chance to look at a document, acknowledges she gave an interview[,] but says[, "]I've read what it says I said but I still can't swear that I said it,["] well, then she is telling you she doesn't remember it today.

> Now, if she says, ["W]ell, I wouldn't have lied to the person I gave the statement to,["] all she's doing is telling you[, "T]rust me, I'm an honest person.["] That's called self-vouching. I'm not putting her down for that. But she is simply saying[, "]I'm a truthful person.["] That doesn't make the memory any clearer for her.

Do you understand? What is admissible evidence is statements when a person says[, "O]n a prior occasion I said this.["] If she says it now, you can accept it now. But if she says, ["W]ell, I don't really remember saying that,["] she is not remembering it as she speaks.

*Id*. at 1142-43.

The jury found Geans guilty of murdering Burns, and the trial court entered judgment of conviction and sentence accordingly. This appeal ensued.

## Discussion and Decision

### *Issue One: Denial of the Motion to Exclude Witnesses*

Geans maintains that the trial court abused its discretion when it denied his motion to exclude the grand jury witnesses from testifying at his subsequent trial. We review a trial court's decision to exclude or admit evidence for an abuse of discretion, and we will reverse only when the decision is clearly against the logic and effect of the facts and circumstances present. *Reese v. State*, 939 N.E.2d 695, 699 (Ind. Ct. App. 2011), *trans. denied*. We will not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Widduck v. State*, 861 N.E.2d 1267, 1269 (Ind. Ct. App. 2007). We will affirm the trial court's decision on any basis apparent in the record, regardless of whether that reason was relied upon by the trial court. *Jeter v. State*, 888 N.E.2d 1257, 1267 (Ind. 2008).

Geans contends that the State's failure to preserve and provide him with a copy of the grand jury proceedings violated his Fourteenth Amendment right to

procedural due process and his Sixth Amendment right to confront the witnesses against him. "It is well settled that the Due Process Clause requires the government to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Rubalcada v. State*, 731 N.E.2d 1015, 1018 (Ind. 2000). A criminal defendant also has a Sixth Amendment right to confront the witnesses against him, and that right is violated if he establishes that "he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby from showing the jury facts from which it could appropriately draw inferences relating to the witness's reliability." *Id.* at 1021. And both the United States Supreme Court and our supreme court have clearly held that a criminal defendant has a right to inspect, for impeachment purposes, prior statements of a government witness. *Jencks v. United States*, 353 U.S. 657, 667-72 (1957); *Antrobus v. State*, 253 Ind. 420, 254 N.E.2d 873, 876-77 (1970).

[20] However, the case before us does not involve just any lost evidence or witnesses' prior written statements. Rather, it involves testimony from grand jury proceedings and, as such, it is governed by rules specific to grand juries.[3] *See Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 398 (1959) ("[*Jencks*] had nothing to do with grand jury proceedings and its language was not

---

[3] Thus, the cases cited by both parties that fail to address the testimony of grand jury witnesses, specifically, are inapplicable. *E.g.*, *Bishop v. State*, 40 N.E.3d 935 (Ind. Ct. App. 2015); *Chissell v. State*, 705 N.E.2d 501 (Ind. Ct. App. 1999), *trans. denied*.

intended to encompass grand jury minutes."); *Hinojosa v. State*, 781 N.E.2d 677, 680-81 (Ind. 2003) (noting that, to the extent *Antrobus*, 254 N.E.2d 873, addressed grand jury records, it was based on a state statute no longer in effect, and that the *Antrobus* analysis does not apply to the current statute regarding access to transcripts of testimony of grand jury witnesses). A criminal defendant is entitled to disclosure of grand jury testimony only when he can show a "particularized need" for that testimony. *Pittsburgh Plate Glass*, 360 U.S. at 400; *Hinojosa*, 781 N.E.2d at 681 (citing Ind. Code § 35-34-10-2).[4] If a defendant has shown such a need but the transcript was denied him, in certain circumstances his conviction may be reversed or the witness testimony may be excluded. *See Dennis v. United States*, 384 U.S. 855, 875 (1966); *Chatman v. State*, 263 Ind. 531, 334 N.E.2d 673, 681 (1975).

[21] Indiana law is even more specific about the circumstances under which a defendant may be entitled to records of grand jury proceedings. State law provides:

> (b) The transcript of testimony of a witness before a grand jury may be produced only:
>
> > (1) for the official use of the prosecuting attorney; or

---

[4] Although the State raised *Hinojosa* in the trial court, it inexplicably failed to mention either *Hinojosa* or Indiana Code Section 35-34-2-10 (2015) on appeal.

(2) upon order of:

> (A) the court which impaneled the grand jury;
>
> (B) the court trying a case upon an indictment of the grand jury; or
>
> (C) a court trying a prosecution for perjury;

but only after a showing of particularized need for the transcript.

I.C. § 35-34-2-10(b) (2015). None of those situations applies to Geans. He was not seeking an order from the court that had impaneled the grand jury (*i.e.*, the St. Joseph Circuit Court), but from the St. Joseph Superior Court. Moreover, the Superior Court was not trying him upon an indictment from the grand jury, as there was no such indictment; rather, Geans was being tried upon an information. And, finally, Geans was not being tried for perjury. Therefore, he would not have been entitled to a transcript of the grand jury proceedings, even if one existed.[5]

---

[5] Geans is also not entitled to relief based on the failure to make and keep a recording of the grand jury proceedings as required under Indiana Code Section 35-34-2-3(d). Although our supreme court held in *Wurster v. State* that a criminal defendant who is *indicted* by a grand jury may sometimes be entitled to reversal of his conviction when the grand jury proceedings were not recorded as required by statute, such is not the situation here. 715 N.E.2d 341, 347 (Ind. 1999) (citing Indiana Code Section 35-34-1-7, which provides that "[a]n *indictment* shall be dismissed upon motion when the grand jury proceeding which resulted in the indictment was conducted in violation of IC 35-34-2." (emphasis added)). Here, the grand jury indicted no one, and the prosecution of Geans was based only on an information.

[22]     Furthermore, even if the circumstances listed in Indiana Code Section 35-34-2-10(b)(2) were applicable here, Geans has failed to show a particularized need for the grand jury transcript. To obtain recordings of a grand jury proceeding, a criminal defendant "must show, with particularity, a need to prevent injustice by providing the requested grand jury transcripts that outweighs the reasons for our long-established policy of grand jury secrecy." *Hinojosa*, 781 N.E.2d at 681. And "a necessary element for establishing a need to prevent injustice is a showing that all reasonable alternative methods of gaining access to the needed information have been exhausted." *Id*. at 682. Here, Geans obtained the same information he sought from Lewis' grand jury testimony when he presented the testimony of Snider at his trial; *i.e.*, testimony that Lewis and Geans each had access to and possessed the murder weapon around the time of the murder. Thus, Geans did not have a "particularized need" of the grand jury testimony for his defense on that issue. Moreover, Geans apparently had in his possession both the old and more recent police reports that would have shown conflicting witness statements, yet he did not make any attempt to submit those reports as substantive evidence. Nor did he call Detective Whitfield as a witness or otherwise attempt to submit as substantive evidence the police report in which Snider allegedly told Detective Whitfield that Lewis had told her he would kill her like he had killed Burns. Thus, Geans failed to exhaust all reasonable alternative methods of gaining access to the needed information. Accordingly, we conclude that the trial court did not abuse its discretion when it denied Geans' motion to exclude the testimony of the grand jury witnesses.

## *Issue Two: Denial of the Motion for Mistrial*

[23]     Geans also argues that the trial court erred when it denied his motion for a mistrial. We review a trial court's decision to grant or deny a mistrial for an abuse of discretion, *Isom v. State*, 41 N.E.3d 469, 480 (Ind. 2015), keeping in mind that a mistrial "is an extreme sanction that is warranted only when no other cure can be expected to rectify the situation," *Adams v. State*, 890 N.E.2d 770, 775 (Ind. Ct. App. 2008), *trans. denied*.

> To prevail on appeal from the denial of a motion for mistrial, the appellant must demonstrate that the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. We determine the gravity of the peril based upon the probable persuasive effect of the misconduct on the jury's decision rather than upon the degree of impropriety of the conduct.

*Id.* (internal citation omitted).

[24]     Geans maintains that the trial court should have granted him a mistrial due to the court's alleged lack of impartiality. We afford trial judges "ample latitude to run the courtroom and maintain discipline and control of the trial." *In re J.K.*, 30 N.E.3d 695, 698 (Ind. 2015); *see also* Ind. Evidence Rule 611(a) ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; . . . "). And it is within the trial court's discretion to "intervene in the fact-finding process in order to promote clarity." *Ruggieri v. State*, 804 N.E.2d 859, 865 (Ind. Ct. App. 2004). At the same time we have

long recognized that litigants have a due process right to an impartial court as a necessity for a fair proceeding. *In re J.K.*, 30 N.E.3d at 699. In assessing whether a trial judge has crossed the barrier of impartiality, we examine the trial judge's actions, comments, and demeanor. *Id*. However, "not all untoward remarks by a judge constitute reversible error. The remarks must harm the complaining party or interfere with the right to a fair trial." *Cook v. State*, 734 N.E.2d 563, 567 (Ind. 2000) (citations omitted).

[25]    Here, Geans contends that the trial court showed a lack of impartiality when it informed the jury during Geans' cross examination of Lewis that an attorney's question to a witness is not evidence and "only becomes relevant if it is answered in a direct way."[6] Tr. at 762. The trial court made this statement to the jury after Geans' counsel had repeatedly asked Lewis whether he remembered arguing with Snider and making the out-of-court statement that he would kill Snider like he had killed Burns. Lewis had repeatedly stated in response to these questions either that he did not remember fighting with Snider and making that statement or that he did not make that statement. Finally,

---

[6] On appeal, Geans also alleges that the trial court engaged in judicial misconduct when it interrupted Geans' cross-examination of Lewis to state: "He is saying he didn't remember. So if he doesn't remember, he can't say anything beyond that. He didn't remember the answer to your question." Tr. at 761. He also contends that the trial court engaged in judicial misconduct when it admonished the jury that Snider's testimony about her prior out-of-court statements to police, which she did not recall having made, was not evidence that she currently remembered making that statement. However, Geans failed to object to either of these statements by the trial judge or move for a mistrial based on these statements; therefore, he has waived any claim of judicial misconduct as to those statements. *See, e.g.*, *Garrett v. State*, 737 N.E.2d 388, 391 (Ind. 2000).

Lewis admitted that he "could have" told Detective Whitfield that he had made that statement to Snider, but he did not remember. *Id.* at 757-58.

[26] It was not error for the trial court to instruct the jury at that point that a witness' statement that he does not remember cannot turn the attorney's question into substantive evidence. *See, e.g.*, 23B Am. Jur. Pl. & Pr. Forms Trial § 247 (2016) ("The attorneys' questions are not evidence. Only the witnesses' answers are evidence. You should not think that something is true just because an attorney's question suggested that it was true."). Geans was attempting to impeach Lewis' testimony by referring to his alleged out-of-court statements to Snider and the police. However, evidence admitted only for impeachment purposes cannot be used as substantive evidence, *Lawrence v. State*, 959 N.E.2d 385, 389 (Ind. Ct. App. 2014), *trans. denied*, and certainly a witness' prior statements that are not admitted into evidence at all cannot be used as substantive evidence.[7] Therefore, the trial court did not err when it instructed the jury not to consider Geans' questions about Lewis' alleged out-of-court statements as substantive evidence of those statements, unless Lewis testified that those out-of-court statements were true and/or that he did make them. The trial court did not abuse its discretion by intervening in the fact-finding

---

[7] Here, Lewis' alleged out-of-court statements were not admitted into evidence but simply referenced during cross-examination for purposes of impeachment. *See* Evid. R. 613(a) (allowing examination of a witness about the witness' prior statement without showing the prior statement to the witness).

process in order to promote clarity. *Ruggieri*, 804 N.E.2d at 865. We affirm the denial of Geans' motion for a mistrial.

[27] Affirmed.

Vaidik, C.J., and Baker, J., concur.