Worland *et al. v.* The State.

---

No. 9431.

WORLAND ET AL. *v.* THE STATE.

CONTEMPTS.—*Courts.*—*Appeal.*—*Statute Construed.*—Under the act of March 31st, 1879, in relation to contempts of courts, R. S. 1881, sections 1005 to 1013, there may be an appeal to the Supreme Court in cases of indirect contempt, though the punishment adjudged be only a fine in a sum less than twenty-five dollars.

VOL. 82.—4

SAME.—*Affidavit.—Information.—Practice.*—In a prosecution for an indirect contempt under such act, an information by the prosecuting attorney is not required. An affidavit or duly verified information of an officer of the court or other responsible person is sufficient, but the filing, in addition, of an information by the prosecutor will not vitiate the proceedings.

SAME.—*Rule.*—The rule against the defendant in proceedings for contempt, should set forth the facts shown in the affidavit or information, but will not be bad for reciting the facts "as alleged in the affidavit," which is the foundation upon which the rule must stand.

SAME.—*Waiver of Rule.*—The defendant in a prosecution for contempt may waive the issuing of a rule against him, and make his answer to the information or affidavit.

SAME.—*Amendment of Rule.*—If in proceedings for contempt the rule be quashed, the information being good, an amended rule may be issued.

SAME.—*Newspaper Publication.*—An information for contempt on account of a newspaper article, which charges that the publication was "false and grossly inaccurate," is insufficient, if it does not specify in what respects the article is false.

From the Shelby Circuit Court.

*B. F. Love, H. C. Morrison, T. B. Adams* and *L. T. Michener,* for appellants.

*D. P. Baldwin,* Attorney General, *W. W. Thornton* and *L. J. Hackney,* for the State.

WOODS, J.—Prosecution under the act of March 31st, 1879, Acts 1879, p. 112, against the appellants and others for an indirect contempt of court. The appellants were adjudged guilty and fined, Worland in the sum of fifty dollars, and Thompson twenty-five dollars. Error is assigned upon the overruling of the motion of the appellants to quash the affidavit and information, and to set aside the rule against them to show cause, and upon other rulings of the court, which need not be stated.

The affidavit on which the prosecuting attorney filed an information and obtained the rule against the defendants was, in substance, as follows:

"That the defendants did unlawfully and falsely make, utter and publish as true a certain false and grossly inaccurate report of a case, trial and proceeding, and certain parts

of a case, trial and proceeding, pending in and of said court, then and there and theretofore during the said, the present, term of said court, to wit: A cause wherein John Landwerlen was and is plaintiff, and Francis J. Rudolf was and is defendant, which said cause, trial and proceeding had been commenced, and was in said Shelby Circuit Court then and is still pending incomplete and not fully determined and ended, and while said court had and has jurisdiction thereof; which said false and grossly inaccurate report so unlawfully and falsely made, uttered and published, was made, reported, printed and published in a daily newspaper of general circulation, printed and published in the city of Shelbyville, in said county of Shelby, in the State of Indiana, called and known as the *Daily Evening Republican,* and is in the words and figures following : " (Here follows a copy of the article alleged to have been published.)    " Which said false and grossly inaccurate report was then and there by said defendants made, uttered and published with intent to destroy the confidence in, and to bring said court into contempt; and by reason of the premises the affiant avers that said defendants are in contempt of this court."

The rule issued against the defendants required them to appear and to " answer to said court the following facts, alleged in said court to constitute a contempt of said court, and to show cause why you (defendants) should not be attached and punished for such contempt, which is charged to exist, by reason of the publication by you, with others, of an alleged false and grossly inaccurate report of a case, trial and proceeding, and certain parts of a case, trial and proceeding, then, to wit, on the 19th day of January, 1881, and now pending in the said Shelby Circuit Court, undetermined and not fully completed and ended, and heretofore commenced in said court; which report was on said day published in a newspaper printed and published in Shelbyville, in said county and State, known and called the *Daily Evening Republican,* and is in the words and figures following : " (here is set out the alleged publica-

tion); "which said alleged false and grossly inaccurate report was of and concerning the case of John Landwerlen against Francis J. Rudolf, pending in said Shelby Circuit Court as aforesaid."

The publication referred to was as follows:

" INDIGNANT CATHOLICS—THEY MEET AND PASS A SERIES OF STRONG RESOLUTIONS IN DEFENCE OF THEIR RELIGION, DECLARE THEIR PURPOSE AND DO NOT HESITATE TO ATTACH THEIR NAMES TO THE IMPORTANT DOCUMENT FOR PUBLICATION.

" We, the undersigned members of St. Joseph's Church, Shelbyville, Ind., held a meeting on Monday evening, January 10th inst. The meeting having been called to order by Mr. Simon Worland, Mr. Peter Hirschauer was elected chairman, and Mr. Simon Worland, secretary.

" The chairman then announced the object of the meeting. He stated that they had assembled to discuss the conduct of the court of Shelby county, Indiana, and the assertions made by Judge Glessner and E. K. Adams during the trial of *Landwerlen* v. *F. J. Rudolph.*

" We first of all unanimously express our regret that the court of Shelby county, Indiana, had lost sight of its high calling and of the meaning of the constitution of the United States in the aforesaid trial. The constitution of these United States guarantees equal rights to all and full freedom of conscience to all—to Jews and Gentiles, to Christians and heathens alike. In fact, the constitution knows no religion, nor do the courts of these United States know any religion. Said trial was from the beginning to the end a continued insult on the witnesses individually, and on the Catholics in general. Catholicity seemed to be the main part of the trial. The witnesses were obliged to make their profession of faith in the court-room on this occasion. It may be truly called a theatrical mockery of the Catholics of Shelby county. The court allowed the attorneys, Judge Glessner and E. K. Adams, to

use the most vilifying and abusive language against the defendant, and the Catholics in general. The court has allowed such and we hold it responsible. The court also excused an important witness in the case—Dr. Kennedy—with an excuse that does not correspond with the statement of the doctor, made this evening to a committee appointed by this meeting. For this also we hold it responsible. The court also refused to hear the testimony of Dr. Parrish, for which we also hold it responsible.

"We unanimously denounce as false and untrue the assertions made by Judge Glessner and E. K. Adams, viz.: ' That the defendant in this case had called a meeting and instructed the persons of the meeting how and what to swear in his behalf, whether true or false.'

"We challenge said lawyers to prove the above assertion, and, unless they do so, they will stand branded as vilifiers and as public slanderers.

"We denounce as false the assertion of Judge Glessner, viz.: ' That a Catholic priest can invite any member of his church to swear false, and then absolve such from the crime of perjury, and that everything is all right.'

"We challenge Judge Glessner to prove the above assertion, and that such is the doctrine of the Catholic church. If he fails to do this, his Honor will stand branded as a falsifier and a public slanderer.

"Having plainly stated the reason of our dissatisfaction with the treatment we have received at their hands, and with the consent of the court, to which we had heretofore given our entire support, we unanimously agree to remember such treatment in the future, when our vote will be as valuable as any others. And we further agree that we will give our entire support to bring about a change in the court of Shelby county, Indiana. Witness our hands.

"Signed:          PETER HIRSCHAUER, chairman.

                   "SIMON B. WORLAND, secretary.

" And the other defendants, except Thompson."

We are met at this point with a motion that the appeal of Thompson be dismissed. It is claimed that there is no right of appeal from a judgment assessing a fine of less than fifty dollars for a contempt of court.

By the last clause of section 9 of the act above mentioned, it is provided, in reference to indirect contempts, that "the defendant, having appeared to such rule, may except, file a bill of exceptions, and appeal to the general term and to the. Supreme Court, in the same manner as in cases of direct contempt."

The provision concerning the right of appeal from a conviction for direct contempt is contained in the 7th section of the act, and is as follows:

"And if found guilty, the defendant shall have the right to except to the opinion and judgment of the court. And in all cases where the defendant may be adjudged to pay a fine of fifty dollars or more, or to be imprisoned for such contempt, he shall have the right, either before or after the payment of such fine or undergoing such imprisonment, to move the court to reconsider its opinion and judgment of the case, upon the facts before it, or upon the affidavits of any or all persons who were actually present and heard or saw the conduct alleged to have constituted such contempt; * * * and, if the court shall thereupon overrule such motion, the defendant may except and file a bill of exceptions, as in other criminal actions; and in all cases an appeal shall lie thereupon to the Supreme Court."

The appellant contends that the last clause gives the right of appeal in all cases of direct contempt, though the punishment be only a fine of less than fifty dollars, and that, in cases of indirect contempt, the only restriction on the right of appeal, which, as is claimed, is allowed in all criminal cases, is, that the party may "appeal in the same manner as in cases of direct contempt," and that this restriction applies only to the mode of procedure and not to the right itself.

What the construction of the statute in this particular

ought to be, in respect to direct contempts, we need not and do not now decide; but after a careful consideration of the subject, in respect to indirect contempts, we have concluded, with some hesitancy, to hold that the right of appeal is not restricted by the amount or nature of the penalty.

This brings us to a consideration of the merits of the appeal.

The fifth section of the act regulating prosecutions for contempt provides:

" Every person who shall falsely make, utter, or publish any false or grossly inaccurate report of any case, trial, or proceeding, or part of any case, trial, or proceeding thereof, shall be deemed guilty of an indirect contempt of the court in which such case, trial, or proceeding may have been instituted, held, or determined," etc.

. Section 8 prescribes and defines the manner in which a proceeding for indirect contempt shall be instituted and conducted, as follows: " In all cases of indirect contempt, the person charged therewith shall be entitled, before answering thereto or being punished therefor, to have served upon him a rule of the court against which the alleged contempt may be committed; which said rule shall clearly and distinctly set forth the facts which are alleged to constitute such contempt, and shall specify the time and place of such facts with such reasonable certainty as to inform the defendant of the nature and circumstances of the charge against him. * * * * No such rule, as hereinbefore provided for, shall ever issue until the facts alleged therein to constitute such contempt shall have been brought to the knowledge of the court by an information duly verified by the oath or affirmation of some officers of the court or other responsible person.

" Sec. 9. If the defendant shall fail to appear in said court, at the time and place specified in the rule provided for in the last preceding section, to answer the same, or if, after having appeared thereto, the defendant shall fail or refuse to answer touching such alleged contempt, the court may pro-

ceed at once, and without any further delay, to attach and punish him or her for such contempt; but if the defendant shall answer to the facts set forth in such rule, by showing that, even if they are all true, they do not constitute a contempt of the court, or by denying or explaining or confessing and avoiding them, so as to show that no contempt was intended, then, and in every such case, the court shall acquit and discharge the defendant. But if the defendant shall not, in his answer to such rule, sufficiently deny, explain, or avoid the facts therein set forth, so as to show that no contempt has been committed, the court may proceed to attach and punish him for such contempt," etc.

It is clear that no information by the prosecuting attorney is required in a prosecution under this statute. An affidavit or "information duly verified by the oath or affirmation of some officers of the court or other responsible person," is required, and nothing more, and upon this information the rule of court issues, wherein shall be set forth the facts stated in the information, which are alleged to constitute the contempt. The fact that an information, in addition to the affidavit, was filed by the prosecuting attorney, does not affect the validity of the proceeding. It was superfluous, but harmless. The specific objections made to the affidavit, and to the rule of court issued against the appellant, are the following:

" *First.* That there is a repugnancy in charging, though in the language of the statute, that the publication was 'false and grossly inaccurate;' that a false thing is false *in toto*, and a grossly inaccurate thing is something less than false, and different from it, repugnant to it.

" *Second.* That it is not shown wherein the report was inaccurate and false.

" *Third.* That the rule against the appellant was defective, for the further reason that it does not 'clearly and distinctly set forth the facts which are alleged to constitute such contempt,' but professes only to set forth alleged facts; that the rule is the pleading, which the defendant in such a case must

answer, and it must contain a direct and explicit charge of the facts, and not of alleged facts, which are claimed to constitute the contempt."

It is true that the defendant is required to answer the rule, or "the facts set forth in such rule," and, consequently, the necessary facts must be set forth therein; yet we think it enough, if they are recited therein as alleged or charged in the information or affidavit, which is the real foundation of the proceeding, and without which the rule itself can not stand. See *Gill* v. *State, ex rel.,* 72 Ind. 266. The issuing and service of the rule is necessary to the jurisdiction of the court over the defendant charged with indirect contempt, unless he consent to appear voluntarily, and, if the rule be defective, it should, on motion, be quashed and the defendant discharged therefrom, though the information be good; and yet, if the defendant should appear and voluntarily consent to answer to the information, without the issuing and service of a rule, we perceive no insuperable objection to its being done. So, too, if the rule be quashed, on account of defects in itself, unconnected with the affidavit, it may doubtless be amended and re-issued and served. In any view, the proceeding must be deemed to rest on the verified information, and if that is sufficient, and if the rule contains a statement of the facts constituting the charge as alleged in the information, it must be deemed good. There is no injustice to the accused in so holding, because, if the information is defective, he can move to quash or set aside the rule, on account of the insufficiency of the affidavit.

As to the alleged repugnancy, the terms "false" and "grossly inaccurate" are not so inconsistent that they may not stand together in a charge otherwise sufficient. It might be enough to charge in such a case that the defendant had uttered a false publication, and it would perhaps be held good as meaning that the statement published was totally false. To charge simply that the publication was grossly inaccurate, would not

be enough, but it would be necessary to specify in what respect the same was claimed to be inaccurate.

In this case the charge is that the publication was "false and grossly inaccurate," and the question is whether that is sufficiently definite. We have come to the conclusion that it is not. The use of the words "*grossly inaccurate*" implies that the publication was not wholly false, and that the word *false,* as used, meant only false in some respects or degree. This being so, it is a plain and just requirement that the particulars in which it was designed to show that the publication was false or inaccurate, should have been stated. It may be that some of the statements contained in the publication are not such as to sustain a charge of contempt, if conceded to be false or inaccurate. The charge surely ought to be so definite and distinct that its meaning and sufficiency could be determined on motion, and that the accused could know certainly what he was required to answer.

The judgment against each appellant is reversed, and the case remanded with instruction to sustain the motions to quash both the information and the rule to show cause.