


FILED
Sep 05 2024, 2:42 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 24S-MI-68

## Russell G. Finnegan,
*Appellant (Defendant below),*

–v–

## State of Indiana,
*Appellees (Plaintiff below).*

Argued: April 4, 2024 | Decided: September 5, 2024

Appeal from the Pulaski Circuit Court

No. 66C01-2110-MC-168
The Honorable David Chidester, Special Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 23A-MI-442

**Opinion by Justice Massa**

Chief Justice Rush and Justices Slaughter and Molter concur.
Justice Goff concurs in part and dissents in part with separate opinion.

**Massa, Justice.**

A judge held Russell Finnegan in indirect contempt for sending vulgar communications to the court. During the proceedings, Finnegan's counsel requested a mental-health evaluation pursuant to Indiana Code section 35-36-2-2(b), which the trial court denied. The Court of Appeals found the denial to be error and reversed. While a court can certainly consider a defendant's mental health, and even order an evaluation when weighing a contempt decision, we hold that the statutory procedures for asserting the insanity defense in criminal proceedings do not apply in an indirect criminal contempt action because it is not a "criminal case" as the relevant statute uses that phrase.

# Facts and Procedural History

In August 2021, Special Judge John Potter held Russell Finnegan in contempt of court for sending potentially "contumacious" material to Judge Kim Hall. Appellant's App. Vol. II, pp. 12–15. Following the contempt finding, Finnegan mailed to Judge Potter a copy of the contempt order with the words "F*** U HARRY POTTER" and "VOID" written across the pages. *Id.* at 15–17. Finnegan then sent the judge two letters. In his first letter, Finnegan wrote, "You can shove this back in your c*** craver, whatever orifice that may be of yours or all of them. You sir are a f****** pervert and a very stupid man." *Id.* at 18. In his second letter, Finnegan opened with, "Jonny, I want my liver back!" and closed with, "Ketch you on the flip, peace out c*********!" *Id.* at 20. After receiving these letters, Judge Potter issued a "Rule to Show Cause for Indirect Criminal Contempt" alleging Finnegan's correspondence "show[ed] the continuing contumacious behavior" and "his blatant and continuing disrespect and flagrant disregard for the Court's authority, the Judge, and Attorneys who are officers of this Court." *Id.* at 12–13.

During the contempt hearing, Finnegan's counsel informed the trial court that Finnegan was undergoing mental health evaluations in an unrelated criminal case. Following that hearing, Finnegan filed a notice of intent to raise an insanity defense under Indiana Code section 35-36-2-1

and requested the appointment of psychiatrists or psychologists to evaluate him and testify at the contempt hearing. Finnegan's counsel also moved for a continuance for mental-health evaluations. The trial court denied Finnegan's continuance motion but took no action on his request to appoint experts for an evaluation.[1] Following the final contempt hearing, the trial court found Finnegan in contempt under Indiana Code section 34-47-3-1 and ordered him to serve 170 days in jail.

Finnegan appealed and the Court of Appeals reversed, finding the trial court abused its discretion when it failed to appoint experts to conduct mental health evaluations. *Finnegan v. State*, 221 N.E.3d 1232, 1238 (Ind. Ct. App. 2023). The Court of Appeals determined a criminal contempt proceeding was a "trial of a criminal case" subject to Indiana Code section 35-36-2-2, and therefore Finnegan was "entitled to the same statutory protections afforded other criminal defendants, including the right to file a notice of insanity defense and obtain the appointment of appropriate experts to testify at the contempt proceedings." *Id.*

The State petitioned for transfer, which we granted, 230 N.E.3d 892 (Ind. 2024), thus vacating the Court of Appeals' opinion. App. R. 58(A).

---

[1] Finnegan argues that the trial court abused its discretion by refusing to "allow counsel the necessary time to allow the evaluations to be completed in another matter," Appellant's Br. at 18, because the criminal conduct occurred at the same time as his alleged contemptuous behavior, and those mental-health results could affect whether Finnegan acted with the requisite "willful disobedience," Indiana Code § 34-47-3-1; *see Witt v. Jay Petroleum, Inc.*, 964 N.E.2d 198, 202 (Ind. 2012) (recognizing that "[c]rucial to the determination of contempt is the evaluation of a person's state of mind"). Yet Finnegan's counsel never requested a continuance from the trial court to allow for the evaluations to be completed in the unrelated criminal matter, and appellate counsel did not mention the two requirements for showing abuse of discretion by the trial court in denying a continuance: good cause and prejudice. *See In re K.W.*, 12 N.E.3d 241, 244 (Ind. 2014). Since these arguments were not properly before us, we decline to address them. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring an argument be supported by coherent reasoning with citations to authority); *Davis v. State*, 835 N.E.2d 1102, 1113 (Ind. Ct. App. 2005) (observing that failure to present a cogent argument or citation to authority constitutes waiver of issue on appellate review), *trans. denied*.

# Standard of Review

The trial court has the inherent power to "punish unseemly behavior" and hold a party in contempt. *Reynolds v. Reynolds*, 64 N.E.3d 829, 832 (Ind. 2016) (cleaned up). We review the trial court's judgment for an abuse of discretion and will reverse a contempt finding "only if there is no evidence or inference" to support the finding. *Id.* (quotations omitted).

Whether a finding of indirect contempt entitles the same statutory safeguards afforded criminal defendants under the Indiana Code is a question of statutory interpretation, which we review de novo. *See ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016). When interpreting a statute, our goal is to "determine and give effect to the intent of the legislature." *Id.* at 1196. We start with the statute's text and afford "its words their plain meaning and consider the structure of the statute as a whole." *Id.* at 1195. We are mindful of what a statute says and does not say. *Id.* (quotations omitted). "[W]e do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result." *Anderson v. Gaudin*, 42 N.E.3d 82, 85 (Ind. 2015) (quoting *City of N. Vernon v. Jennings Nw. Regu'l. Utils.*, 829 N.E.2d 1, 5 (Ind. 2005)).

# Discussion and Decision

"[C]ontempt of court involves disobedience" that "undermines the court's authority, justice, and dignity." *City of Gary v. Major*, 822 N.E.2d 165, 169 (Ind. 2005). Contempt is neither a criminal offense nor a civil offense. *State v. Heltzel*, 552 N.E.2d 31, 33 (Ind. 1990). It is instead a *sui generis* proceeding making it a unique proceeding that is divided into two categories: direct contempt and indirect contempt. *Id.* at 33–34.

Direct contempt involves acts that "are committed in the presence of the court or in such close proximity to it so as to disrupt its proceedings while in session." *Id.* at 34 (citing 6 Ind. Law Encyc. Contempt § 2 (1958)). When actions occur near or within the presence of a court, the court has the authority to summarily find a person in direct contempt of court and

sanction that individual for their conduct without holding a hearing. *In re Nasser*, 644 N.E.2d 93, 95 (Ind. 1994). "[T]his power is to enable the court to protect itself against 'gross violations of decency and decorum.'" *Id.* (quoting *Brown v. Brown*, 4 Ind. 627, 627 (1853)).

Indirect contempt involves acts that are "committed outside the presence of the court 'which nevertheless tend[] to interrupt, obstruct, embarrass or prevent the due administration of justice.'" *Heltzel*, 552 N.E.2d at 34 (quoting 6 Ind. Law Encyc. Contempt § 2). These acts often "undermine the activities of the court but fail to satisfy one of the other direct contempt requirements." *Nasser*, 644 N.E.2d at 95 (quoting *Hopping v. State,* 637 N.E.2d 1294, 1296 (Ind. 1994)). Unlike direct proceedings, indirect contempt proceedings involve statutory procedures to afford due process protections. *Reynolds*, 64 N.E.3d at 832–33.[2]

The trial court found Finnegan in indirect contempt of court because of his vulgar letters, but the Court of Appeals reversed, concluding alleged indirect contempt defendants are "entitled to the same statutory protections afforded other criminal defendants." *Finnegan*, 221 N.E.3d at 1238. The State argues Finnegan cannot assert an insanity defense because the criminal procedural statutes do not apply in indirect contempt proceedings. We affirm the trial court on the narrow ground that the insanity defense statutes, as codified in Indiana Code chapter 35-36-2, *et seq.,* do not apply to indirect contempt proceedings.[3] While an alleged contemnor is always free to argue his mental state to excuse, explain, or

---

[2] No constitutional due process challenge was raised below.

[3] Finnegan also argued that the application of Indiana Code section 34-47-3-1 encroached his constitutional right to free expression under Article 1, Section 9 of the Indiana Constitution. We find Finnegan waived this argument because he raised the claim for the first time on appeal. *See Ellis v. State*, 194 N.E.3d 1205, 1217 (Ind. Ct. App. 2022) (finding appellant waived their Article 1, Section 9 of the Indiana Constitution argument because appellant failed to raise the argument before the trial court), *trans. denied*.

mitigate his contemptuous behavior, the statutes simply do not compel a judge to treat him precisely like a criminal defendant.[4]

Looking to the statutory text, the insanity defense statutes use the phrase "criminal case" to describe a defendant or trial, demonstrating the General Assembly's intent to limit the affirmative defense to criminal cases. *See* I.C. § 35-36-2-1 (informing a "defendant in a criminal case" on the timeliness of inserting an insanity defense); *id.* § -2(a) (stating a defendant can provide evidence when asserting an insanity defense "[a]t the trial of a criminal case"). Yet the phrase "criminal case" does not appear in the indirect contempt procedure statutes. *ESPN*, 62 N.E.3d at 1195 ("[W]e are mindful of both what [a statute] does say and what it does not say." (quotations omitted)). Instead, the statutes tie the defense to "the **offense** charged in the indictment or information." I.C. § 35-36-2-2(a) (emphasis added). And the Legislature has determined that indirect contempt is neither a "crime" nor a "criminal offense" as defined by the Code. *See id.* § 35-31.5-2-75 ("'[C]rime' means a felony or a misdemeanor"); *see also Heltzel*, 552 N.E.2d at 33 (stating that contempt is not a criminal offense); *Niemeyer v. McCarty*, 51 N.E.2d 365, 367 (Ind. 1943) ("Contempt of court is not a crime."), *overruled on other grounds by Ashton v. Anderson*, 279 N.E.2d 210 (Ind. 1972)). The Statute defines "offense" as a "crime," I.C. § 35-31.5-2-215, and "crime" is defined as "a felony or a misdemeanor," *id.* § -75(a). Because indirect contempt is neither, it is not an "offense" for which the statutory insanity defense applies. Additionally, in the indirect contempt statutes, the General Assembly calls an individual a singular "person," *id.* §§ 34-47-3-1, -2, -3, "the defendant," *id.* § -6, or "the person charged with indirect contempt," *id.* § -5. These linguistic statutory differences reveal the General Assembly's intent to limit the procedural protections of the insanity defense to criminal cases.

---

[4] The dissenting opinion, while purportedly engaging in statutory interpretation, is really making a due process argument that was waived here and overstates the breadth of the court's opinion. *Post*, 5–7 (Opinion of Goff, J.). Trial courts are free to consider evidence of mental state in a contempt proceeding; the statutes, however, do not compel the trial courts to appoint experts unless and until the legislature says so. I.C. § 35-36-2-2.

The General Assembly also distinguished the procedures governing indirect contempt by placing it under Title 34, which governs civil procedures, while Title 35 governs criminal proceedings. Particularly, Indiana Code chapter 34-47-3, *et seq.*, houses the specific procedures a court is to follow in an indirect contempt proceeding while Indiana Code chapter 35-26-2 houses the specific procedures a court is to follow in a criminal proceeding. This separation by the General Assembly empowers courts to act expediently in contempt proceedings to punish inappropriate behavior that undermines the court's authority, justice, and dignity. *Witt*, 964 N.E.2d at 202.

The statutory language is clear. Indirect contempt proceedings are separate from criminal proceedings. An alleged contemnor is entitled to "adequate notice and an opportunity to be heard[,]" *Reynolds*, 64 N.E.3d at 833 (quoting *In re Contempt of Wabash Valley Hosp., Inc.*, 827 N.E.2d 50, 62 (Ind. Ct. App. 2005)), which includes a rule to show cause that includes enough information about "the nature and circumstances of the charge" and offers a chance to show cause why contempt "should not be attached" and the contemnor not be punished for the disdainful actions, I.C. § 34-47-3-5(b)(2)–(3). The statute empowers a court to punish a contemnor for failing to appear or for failing to answer the alleged contempt. *Id.* § -6(a). Additionally, the court may "acquit and discharge" the alleged contemnor if they provide evidence that shows either the facts "do not constitute a contempt" or they did not intend contempt. *Id.* § -6(b). If the court determines that the alleged contemnor's answer fails "to show that no contempt has been committed," then the court may attach and punish the contemnor by fine, imprisonment, or both. *Id.* § -6(c).

The General Assembly's intent is further revealed by the stark differences in the procedural rules mandated for criminal versus contempt proceedings. Criminal proceedings begin with the filing of charging information or indictment, Ind. Crim. Rule 2.1, but indirect contempt proceedings are initiated by a rule to show cause order that describes the allegations and sets a hearing date, I.C. § 34-47-3-5. Criminal proceedings have an initial hearing or omnibus date, *id.* § 35-36-8-1, but indirect contempt proceedings do not have an initial hearing, *id.* § 34-47-3-5(b)(3) (stating that a person charged with indirect contempt must be served with

a rule to show cause that specifies a "time and place at which the defendant is required to show cause"). Criminal defendants are often entitled to a jury trial, Crim. R. 3.1, but indirect contempt proceedings typically occur before an assigned special judge, I.C. § 34-47-3-7.[5] A criminal defendant's jail time can be subject to good-time credit, I.C. § 35-50-6, *et seq.*, but resulting jail time is not subject to good-time credit in indirect contempt cases, *Jones v. State*, 847 N.E.2d 190, 201 (Ind. Ct. App. 2006) (declining to apply the good-time credit statutes to Jones's sanction for contempt because he was "not imprisoned for a crime"), *trans. denied*. Lastly, the procedures in indirect contempt and criminal cases are in separate titles, articles, and chapters in the Indiana Code. Title 34 governs civil proceedings, including indirect contempt located at Indiana Code chapter 34-47-3, whereas Title 35 governs criminal proceedings, including the insanity defense located at Indiana Code chapter 35-36-2.

The text of Indiana Code chapter 35-36-2 contemplates the assertion of an insanity defense (and the statutory procedural rights it triggers) only in criminal cases. Indiana Code section 35-36-2-1 instructs "the defendant **in a criminal case**" to file notice of intent to use the insanity defense no later than twenty days if charged with a felony and no later than ten days if charged with a misdemeanor. I.C. § 35-36-2-1. The insanity defense statute requires the trial court to make psychologist, psychiatrist, or physician appointments "[a]t the trial of a criminal case" to examine the defendant and testify at trial. *Id.* § -2(a), (b). A jury is instructed what it must find when "the defense of insanity is interposed[.]" *Id.* § -3. The statutes declare what is required of a prosecutor when a defendant is found "not responsible by reason of insanity." *Id.* § -4.

---

[5] Defendants in criminal proceedings can demand trial by jury if the **potential** sentence they face exceeds six months. *Baldwin v. New York*, 399 U.S. 66, 73–74 (1970) (emphasis added). In contrast, alleged contemnors are entitled to a jury trial only if the sentence **actually imposed** exceeds six months. *Holly v. State*, 681 N.E.2d 1176, 1177–78 (Ind. Ct. App. 1997) (citing *Cheff v. Schnackenberg*, 384 U.S. 373, 380 (1966)) (emphasis added).

# Conclusion

Indirect contempt of court is neither criminal nor civil, but *sui generis*. Based on our reading of our distinct statutes on contempt and the content and structure of the criminal code as a whole, we hold that the insanity defense statutes do not apply to indirect contempt proceedings and affirm the trial court. Whether that might offend due process must wait for a case where it is raised.

Rush, C.J., and Slaughter and Molter, JJ. concur.
Goff, J., concurs in part and dissents in part with separate opinion.

ATTORNEY FOR APPELLANT RUSSELL FINNEGAN
Kay A. Beehler
Terre Haute, Indiana

ATTORNEYS FOR APPELLEES STATE OF INDIANA
Theodore E. Rokita
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

**Goff, J., concurring in part and dissenting in part.**

I agree that Finnegan waived his argument that application of code section 34-47-3-1 violated his right to free expression under the Indiana Constitution. While this Court "has long exercised its discretion to address the merits of a party's constitutional claim notwithstanding waiver," *see Jackson v. State*, 165 N.E.3d 641, 646 (Ind. Ct. App. 2021), Finnegan cites no compelling grounds for applying a waiver exception here.

I disagree, however, with the Court's holding that the "procedures for asserting the insanity defense in criminal proceedings do not apply in an indirect criminal contempt action because it is not a 'criminal case.'" *Ante*, at 2. In my view, indirect criminal contempt **is** a crime, and a defendant faced with such a charge **is** entitled to the same protections enjoyed by other criminal defendants, including the right to opinion testimony from mental-health experts to show evidence of insanity.

## I. An indirect-contempt proceeding amounts to a "criminal case" subject to the insanity-defense statutes.

"At the trial of a criminal case" in which a defendant intends to raise an insanity defense, the Indiana criminal code allows the parties to present evidence "to prove the defendant's sanity or insanity at the time at which the defendant is alleged to have committed the offense charged." Ind. Code § 35-36-2-2(a). When the defendant files notice of an insanity defense, the court must appoint two or three "competent" and "disinterested" psychiatrists, psychologists, or other mental-health experts to "examine the defendant and testify at the trial." I.C. § 35-36-2-2(b).

The dispute here centers on whether an indirect-contempt proceeding amounts to a "criminal case" subject to these statutes. The Court holds that it does not. I would hold otherwise.

## A. Modern jurisprudence holds that criminal contempt is "a crime in every fundamental respect."

The majority begins its decision by citing precedent in which this Court has stated that contempt "is not a criminal offense" but, rather, is a "*sui generis* proceeding" neither civil nor criminal in nature. *Ante*, at 4, 6 (citing *State v. Heltzel*, 552 N.E.2d 31, 33 (Ind. 1990)). But reliance on this precedent, in my view, is misplaced.

The language used in *Heltzel* stands in clear tension with the long-held view in Indiana that a "proceeding for contempt is in the nature of a criminal prosecution" because the "results and consequences are the same in the one proceeding as in the other." *Whittem v. State*, 36 Ind. 196, 204 (1871); *see also State v. Shumaker*, 200 Ind. 623, 707, 163 N.E. 272, 274 (1928) (Martin, J., concurring in part and dissenting in part) ("Criminal contempt proceedings in Indiana have always been governed by criminal procedure."). Indiana courts, moreover, have historically characterized indirect criminal contempt as a "public offense," the charges of which entitle the defendant "to all of the substantial rights of a person accused of crime," including the "presumptions of innocence that avail him in any criminal case." *Shumaker*, 200 Ind. at 705–06, 708, 163 N.E. at 273–74 (Martin, J., concurring in part and dissenting in part).

To be sure, *Heltzel* may find some precedential support for its proposition. *See, e.g.*, *Niemeyer v. McCarty*, 221 Ind. 688, 692, 51 N.E.2d 365, 367 (1943) (insisting that "[c]ontempt of court is not a crime"), *overruled on other grounds by Ashton v. Anderson*, 258 Ind. 51, 279 N.E.2d 210 (1972). But the language used in that opinion rests on an outdated—if not obsolete— view of contempt proceedings. Historically, courts considered contempt neither criminal nor civil in nature, the idea being that the sanction existed not as a "creature of legislation" but, rather, as a power "inherent" in the courts. *State ex rel. Trotcky v. Hutchinson*, 224 Ind. 443, 445–46, 68 N.E.2d 649, 650 (1946); *see also Green v. United States*, 356 U.S. 165, 187 (1958) (referring to the "unique character" of criminal contempt, given the "absence of a statutory limitation" on sanctions imposed for its commission), *overruled by Bloom v. Illinois*, 391 U.S. 194 (1968). But the **modern rule**, by contrast, holds that criminal contempt is "a crime in

every fundamental respect." *Bloom*, 391 U.S. at 201. Applying this modern view, Indiana courts have concluded that the threat of incarceration for criminal contempt triggers the defendant's right to an indigency hearing and to the appointment of counsel, that the punitive sanctions imposed in a criminal-contempt proceeding implicate double-jeopardy concerns, and that a criminal-contempt finding may be collaterally attacked under our post-conviction rules.[1] *See, respectively*, *In re Paternity of C.N.S.*, 901 N.E.2d 1102, 1106 (Ind. Ct. App. 2009); *Buford v. State*, 139 N.E.3d 1074, 1080 (Ind. Ct. App. 2019); *Wine v. State*, 147 N.E.3d 409, 415 (Ind. Ct. App. 2020).

Still, the Court cites "the stark differences" in procedural rules that govern crimes (on the one hand) and contempt proceedings (on the other hand). *Ante*, at 7. Specifically, the Court points to (1) the initiation of an indirect-contempt proceeding through a rule-to-show-cause order rather than an information or indictment, (2) the lack of an initial hearing or omnibus date in an indirect-contempt proceeding, and (3) the resolution of an indirect-contempt proceeding by an assigned special judge rather than a jury. *Id.* at 7–8.

I'm left unpersuaded.

The first of these purported "differences" isn't necessarily so. Before the trial court issues a rule-to-show-cause order, the person must have been "charged with indirect contempt." I.C. § 34-47-3-5(a). The court "may not issue" its rule-to-show-cause order until the facts of the alleged contempt have been "brought to the knowledge of the court by an information" and those facts have been "duly verified by the oath of affirmation of some officers of the court or other responsible person." I.C. § 34-47-3-5(d). While the prosecutor herself need not file the information, *Worland v. State*, 82 Ind. 49, 56 (1882), in some cases she will, *see, e.g.*, *Heltzel*, 552 N.E.2d at 32 (noting that the defendants "were charged with indirect contempt of court

---

[1] Modern courts, to be sure, still recognize on occasion the unique nature of contempt proceedings. *See, e.g.*, *Buford*, 139 N.E.3d at 1079 (using the "*sui generis*" label). But courts consistently characterize these proceedings as either civil or criminal, depending on the nature and purpose of the sanction imposed. *See, e.g.*, *In re A.S.*, 9 N.E.3d 129, 132 (Ind. 2014) (distinguishing civil contempt from criminal contempt).

in an information filed by the Lake County Prosecutor") (citations omitted). Either way, a "charge of criminal contempt should be prosecuted by the State against the defendant, in an independent action." *State ex rel. McMinn v. Gentry*, 229 Ind. 615, 619, 100 N.E.2d 676, 678 (1951).[2] And, as in a criminal case, the charging information itself must be "sufficiently definite" for the accused to ascertain and defend against the charges. *Worland*, 82 Ind. at 58. Any "ambiguities or uncertainties" in the information "will be construed against the state." *Tusing v. State*, 241 Ind. 650, 654, 175 N.E.2d 17, 19 (1961).

Second, the lack of an initial hearing or omnibus date (which governs the time for filing motions in a criminal case) doesn't necessarily preclude a trial court's discretion to permit certain filings. In fact, under the insanity statutes, a trial court may, "in the interest of justice and upon a showing of good cause," allow a defendant to belatedly raise an insanity defense. I.C. § 35-36-2-1; *see also Zamani v. State*, 33 N.E.3d 1130, 1135–36 (Ind. Ct. App. 2015) (stressing that the trial court's discretion controls when the omnibus deadline has passed).

Third, despite the Court's suggestion to the contrary, a defendant charged with criminal contempt may be entitled to a jury, depending on the seriousness of the offense. Petty contempt, which implicates a sentence of six months or less, may be tried without a jury. *Holly v. State*, 681 N.E.2d 1176, 1177 (Ind. Ct. App. 1997) (citing *Codispoti v. Pennsylvania*, 418 U.S. 506, 511 (1974)). But when the expected sentence in a criminal contempt case exceeds six months, the right to a jury trial attaches. *Id.* (citing *Codispoti*, 418 U.S. at 511).

In short, our modern jurisprudence holds that criminal contempt is in fact a crime. And any differences in procedural rules that govern our unique contempt proceedings aren't as "stark" as the Court contends.

---

[2] That's precisely what happened here. On the same day the trial court issued its rule-to-show-cause order, "the State entered its appearance to prosecute the matter." App. Vol. 2, p. 70.

## B. The due-process protections implicated in an indirect-contempt proceeding include the right to call witnesses.

In cases of direct contempt, a trial court may summarily punish the defendant "without formal charges or an evidentiary hearing." *In re Nasser*, 644 N.E.2d 93, 95 (Ind. 1994); *see also Whittem*, 36 Ind. at 211 (noting that a court may "inflict immediate and summary punishment" in cases of direct contempt). The idea is that, because all elements of the offense take place before the court, "the judge need not hear evidence, call witnesses, give the defendant notice, or generally provide the defendant with the procedural safeguards that typically accompany a criminal trial." Ronald J. Rychlak, *Direct Criminal Contempt and the Trial Attorney: Constitutional Limitations on the Contempt Power*, 14 Am. J. Trial Advoc. 243, 250 (1990).

Indirect-contempt proceedings, by contrast, implicate "an array of due process protections, including notice and an opportunity to be heard." *In re Nasser*, 644 N.E.2d at 95. Code section 34-47-3-5 generally embodies these due-process protections. *Reynolds v. Reynolds*, 64 N.E.3d 829, 833 (Ind. 2016) (observing that the rule-to-show-cause statute "fulfills the due process requirement that a contemnor be provided with adequate notice and an opportunity to be heard") (quotation marks and citation omitted). Under this statute, a rule to show cause issued by the court must "specify a time and place at which the defendant" must show why he "should not be attached and punished for such contempt." I.C. §§ 34-47-3-5(a), (b)(3). Moreover, the court must, "on proper showing, extend the time provided under subsection (b)(3) to give the defendant a reasonable and just opportunity to be purged of the contempt." I.C. § 34-47-3-5(c).

Given their inherent power over contempt proceedings, *see City of Gary v. Major*, 822 N.E.2d 165, 169 (Ind. 2005), Indiana courts have elaborated on the scope of due-process safeguards in indirect-contempt proceedings. As a "baseline" of protections, the accused must "receive notice of the contempt allegations against him and have a reasonable opportunity to defend against those allegations through a fair, public hearing that affords the right to counsel and the chance to testify and **call witnesses**." *Hunter v. State*, 102 N.E.3d 326, 329 n.3 (Ind. Ct. App. 2018) (citing *In re Oliver*, 333

U.S. 257, 275 (1948)) (emphasis added).[3] A trial court's refusal to allow the calling of witnesses on the defendant's behalf amounts to reversible error. *See, e.g., La Grange v. State*, 238 Ind. 689, 692, 698, 153 N.E.2d 593, 595, 598 (1958) (reversing and remanding for a new trial in an indirect-contempt proceeding because of the trial judge's "failure to follow the proper procedure" when it "refused to permit the [defendant's] calling of any witnesses").

This right to call witnesses undoubtedly includes the right to opinion testimony from mental-health experts to prove the defendant's sanity or insanity at the time the defendant allegedly committed the offense. Indeed, "[o]pinion testimony from psychiatrists, psychologists, and other mental-health experts is central to a determination of insanity." *Barcroft v. State*, 111 N.E.3d 997, 1003 (Ind. 2018). "Unlike lay witnesses, who can merely describe symptoms they believe might be relevant to the defendant's mental state, mental-health experts can identify the elusive and often deceptive symptoms of insanity and tell the [factfinder] why their observations are relevant." *Id.* (quotation marks and citation omitted). "In short, their goal is to assist factfinders, who generally have no training in psychiatric matters, to make a sensible and educated determination about the mental condition of the defendant at the time of the offense." *Id.* (quotation marks and citation omitted).

To be sure, testimony from these experts "is purely advisory and a factfinder may discredit their testimony, or disregard it completely, in lieu of other probative evidence," including lay testimony or demeanor evidence, from which to infer the defendant's sanity. *Payne v. State*, 144 N.E.3d 706, 710 (Ind. 2020) (quotation marks and citation omitted). But the trial court's prerogative to disregard this testimony doesn't preclude the defendant from offering it at trial. To the contrary, when the defendant

---

[3] *See also Whittem*, 36 Ind. at 211–12 (emphasizing that, in cases of indirect contempt, the accused enjoys "the right to be heard in his defense" and "evidence [may be] offered on the trial"); *Smith v. Indiana State Bd. of Health*, 158 Ind. App. 445, 457, 303 N.E.2d 50, 56 (1973) (citing the defendant's right to "testify and call other witnesses in his behalf" in a proceeding for indirect contempt) (quotation marks and citation omitted).

invokes the insanity defense (like Finnegan did here), "the court **shall** appoint" the requisite number of mental-health experts to "examine the defendant and testify at the trial." I.C. § 35-36-2-2(b) (emphasis added).

## C. Guilt of indirect criminal contempt requires proof that the defendant acted with the requisite *mens rea*.

The State argues that, even if Finnegan were entitled to proceed with an insanity defense, the trial court properly relied on its experience with Finnegan to conclude that his behavior did not rise to the level of mental illness. Appellee's Br. at 19–21. I disagree. Indirect contempt is a specific-intent crime. To be found guilty of the offense, the defendant must have acted with "willful disobedience." I.C. § 34-47-3-1. And, as with any other crime, the State must prove the defendant committed the contemptuous act with the requisite *mens rea* "beyond a reasonable doubt." *Matter of Perrello*, 270 Ind. 390, 398, 386 N.E.2d 174, 179 (1979); *see also Duemling v. Ft. Wayne Cmty. Concerts, Inc.*, 243 Ind. 521, 524, 188 N.E.2d 274, 276 (1963) (willfulness is an essential element of criminal contempt). When the facts presented raise questions over the defendant's capacity to have acted contemptuously with the requisite mental state, courts in other jurisdictions have held that a judge's personal knowledge is no basis for adjudication.

The decision by the Ninth Circuit Court of Appeals in *United States v. Flynt* is instructive. The defendant there (the infamous pornographer) "made a series of insulting, abusive, and obscene remarks" to the trial court during his arraignment on separate criminal charges. 756 F.2d 1352, 1355 (9th Cir. 1985), *amended*, 764 F.2d 675 (9th Cir. 1985). These remarks resulted in an order to show cause. *Id.* Before the rule-to-show-cause hearing, Flynt underwent psychiatric testing to determine his competency to stand trial in the underlying cause. *Id.* at 1355–56. Following these evaluations, Flynt sought access to his own psychiatrists and to confer with counsel in preparation for his defense to the contempt charges. *Id.* at 1356. Arguing that he lacked the requisite mental capacity to commit contempt, he requested a thirty-day continuance to secure his expert witnesses. *Id.* The trial court denied the request. *Id.* At the rule-to-show-

cause hearing, Flynt's defense consisted of testimony from several non-expert witnesses relating to his mental and emotional conditions on the date of the alleged offense. *Id.* Despite this testimony, the judge found Flynt in direct contempt and sentenced him to six months (along with another six months for further outbursts during the hearing itself). *Id.* at 1357.

The Ninth Circuit Court of Appeals reversed, holding that, because the evidence raised a "substantial question" of Flynt's mental capacity to commit contempt, the trial court erred in punishing him "without affording him a hearing at which he could present evidence on the issue of his mental capacity." *Id.* at 1358. A primary reason for allowing a summary adjudication in cases of direct contempt, the court explained, "is that a judge who exercises the summary contempt power has full and immediate knowledge" of the relevant facts. *Id.* at 1364. But "when, at the time of the allegedly contumacious conduct, the district court has before it information that raises a substantial issue as to the criminal responsibility of the alleged contemnor," the court added, "and when facts necessary to a proper resolution of that issue are beyond the personal knowledge of the judge," then there's no basis for summary adjudication. *Id.* at 1365. Citing the psychiatric report prepared for the competency determination in the underlying cause, as well as the "extreme nature" of Flynt's words and conduct before the trial judge, the court concluded that the record "clearly" revealed a "substantial issue" of Flynt's mental capacity. *Id.* at 1365, 1366; *see also People v. Sheahan*, 502 N.E.2d 48, 51 (Ill. App. Ct. 1986) (finding "sufficient facts" in proceeding for direct criminal contempt to have put the "trial judge on notice that the defendant might be mentally ill, making it incumbent upon the trial judge to afford the defendant an opportunity to fashion a defense based upon this mental illness, which might include a defense of not guilty by reason of insanity").

Notably, the court in *Flynt* relied (in part) on *Panico v. United States*, in which the United States Supreme Court considered a summary contempt conviction entered against the defendant during trial. 375 U.S. 29, 29 (1963) (per curiam). During the "course of the previous criminal trial" in that case, "the judge had heard conflicting expert testimony upon the different question of the petitioner's mental capacity to stand trial." *Id.* at

30. And soon after the contempt conviction, "the petitioner was found by state-appointed psychiatrists to be suffering from schizophrenia and committed to a state mental hospital." *Id.* Given these circumstances, the Supreme Court reversed and remanded, holding "that the fair administration of federal criminal justice requires a plenary hearing" to "determine the question of the petitioner's criminal responsibility for his conduct." *Id.*

While *Flynt* and *Panico* involved summary proceedings of **direct** criminal contempt, they stand for the general proposition that a judge's personal knowledge is no basis for adjudication when the facts raise a question, or "substantial issue," as to the defendant's capacity to have acted with the requisite mental state. Here, well before the rescheduled contempt hearing, Finnegan's counsel alerted the judge to a pending mental-health evaluation of Finnegan in an unrelated criminal case. Tr. Vol. 2, p. 7. Another evaluation had apparently already been completed. *Id.* (stating that they've "had one psychiatrist's report" with a "second one" that was "pending"). Though counsel failed to discuss with the trial court the results of the completed evaluation, he elaborated on the issue in his notice of insanity defense, stating that Finnegan had "been examined by a neurologist who has suggested further evaluation and testing; including an EEG as the result of abnormalities suggesting some sort of organic injury." App. Vol. 2, p. 51.

Whether these facts raised a "substantial issue" to warrant further inquiry through expert testimony is a close call but would seem to support Finnegan's request. *Compare Flynt*, 756 F.2d at 1365, 1366 (concluding that a psychiatric report prepared for competency determination in the underlying cause, along with the "extreme nature" of defendant's words and conduct before the trial judge, "clearly" revealed a "substantial issue" of mental capacity to commit contempt), *with United States ex rel. DeStefano v. Woods*, 382 F.2d 557, 559 (7th Cir. 1967), *aff'd sub nom. DeStefano v. Woods*, 392 U.S. 631 (1968) (defendant's erratic behavior at trial, standing alone, does not sufficiently call to the "attention of the trial judge anything that would warrant a sanity hearing") (quotation marks omitted).

At the very least, the trial court should have granted Finnegan's request for a continuance to accommodate the experts' determinations. Given that insanity was his **only** proffered defense to the contempt charges, the denial of the continuance likely resulted in prejudice to him. *See Flynt*, 756 F.2d at 1358 (trial court's denial of continuance "effectively foreclosed Flynt from presenting that defense" that he lacked the requisite mental capacity); *Smith v. Indiana State Bd. of Health*, 158 Ind. App. 445, 454–55, 459, 303 N.E.2d 50, 55, 57 (1973) (reversing conviction for criminal contempt where trial court denied request for continuance, depriving attorney of an opportunity to prepare defense and adequately represent client).

## II. Courts should use the contempt power sparingly.

Finally, I address Finnegan's argument that, because his "conduct did not rise to the level of contempt as defined by Indiana law," the evidence was insufficient to support the court's finding. Appellant's Br. at 16.[4] While acknowledging that his "writings to the court and counsel may have exhibited disdain for the court's rulings," he insists that they did not "bring the court into disrepute" and did not hinder the court's proceedings, let alone obstruct the administration of justice. *Id.*

While Finnegan makes a compelling argument on this front, and while it's certainly a close call in my view, the evidence falls short of "clearly" showing that his acts weren't contemptuous. *See In re Nasser*, 644 N.E.2d at 95.

Contempt generally involves an "act directed against the dignity and authority of the court that obstructs the administration of justice and tends to bring the court into disrepute." *Gerber v. State*, 167 N.E.3d 792, 798 (Ind. Ct. App. 2021). Contempt may be direct or indirect. **Direct contempt** involves "acts which are committed in the presence of the court or in such

---

[4] Finnegan buried this argument in his constitutional claim, presumably explaining why the Court fails to address it.

close proximity to it so as to disrupt its proceedings while in session." *In re A.S.*, 9 N.E.3d 129, 132 (Ind. 2014) (quotation marks and citation omitted). By contrast, **indirect contempt** (the type at issue here), "involves those acts committed outside the presence of the court which nevertheless tend to interrupt, obstruct, embarrass or prevent the due administration of justice." *Reynolds*, 64 N.E.3d at 832 (quotation marks and citation omitted). By statute, indirect contempt includes the willful disobedience of a court's order, an attempt to influence witness testimony or prevent a witness from testifying, or the making of a false statement or publication related to the case or proceeding. I.C. §§ 34-47-3-1 through -4.

Here, Finnegan's communications to Judge Potter and other officers of the court consisted of non-violent threats, derogatory name calling, and baseless accusations. *See* App. Vol. 2, pp. 15–19, 22. And these writings—however tenuously—amount to contemptuous acts as defined by statute. For example, the "VOID" notation on Judge Potter's contempt order arguably constituted the "willful disobedience" of a "lawfully issued" court order or a false statement related to the case. *See* I.C. §§ 34-47-3-1, -4. And Finnegan's accusation that the judge was "corrupt," along with his suggestion that appellate counsel's intelligence equaled that of a fourth grader, also arguably amount to a "false or grossly inaccurate report of any case, trial, or proceeding." *See* I.C. § 34-47-3-4.

Still, most of Finnegan's writings amounted to little more than trash talking. And it's worth emphasizing that, however offensive this language may have been, the "extraordinary action of contempt of court does not lie to heal the wounded sensibilities of a judge." *Grimm v. State*, 240 Ind. 125, 128, 162 N.E.2d 454, 456 (1959) (quotation marks and citation omitted); *see also In re Little*, 404 U.S. 553, 554–55 (1972) (coarse language or "disrespectful" comments, however offensive to the court's sense of dignity, do not amount to contempt). To be sure, this Court applies a deferential standard of review, reversing "only where it clearly appears the acts do not constitute contemptuous acts." *In re Nasser*, 644 N.E.2d at 95 (citation omitted). But the contempt power should be used sparingly. And should it invoke its authority to issue a rule-to-show-cause order in a case alleging indirect contempt, the trial court must carefully follow the "array of due process protections" in place to protect the defendant. *Id.*

# Conclusion

For the reasons above, I concur in part and dissent in part.